Mary S. Amschel (Idaho State Bar No. 10150)
ROSA PLLC
950 West Bannock Street, Suite 1100
Boise, Idaho 83702
Telephone:      +1 (208) 900-6525
Fax:            +1 (208) 515-2203
E-mail:         arosa@rosacommerce.com
                mamschel@rosacommerce.com

Attorney for Plaintiff
ANGELO L. ROSA

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANGELO L. ROSA, an individual residing in the State of Arizona,<br><br>Plaintiff,<br><br><br>v.<br><br>HYUNDAI CAPITAL AMERICA, a California corporation; and DOES 1-100 inclusive,<br><br>Defendants. | Case No.   1:21-cv-00084<br><br><br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

COMES NOW Plaintiff, ANGELO L. ROSA ("Plaintiff" or "Mr. Rosa"), by and through

MARY S. AMSCHEL, ESQ. of the ROSA PLLC law firm and respectfully files his Complaint

("Complaint") against Defendants and alleges as follows:

### I.
### THE PARTIES, JURISDICTION, AND VENUE

1.      Mr. Rosa is an individual residing in the State of Arizona.

2.      Hyundai Capital America is a California corporation having its principal place of

business in Irvine, California, and authorized to transact business in the State of Idaho by virtue of

its domestication as a foreign corporation with the Idaho Secretary of State.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** – Page 1

3.      Defendants DOES 1 through 50, inclusive, are sued herein under fictitious names. Their true names and identities are unknown to Plaintiff at present.  When ascertained, Plaintiff will amend this Complaint by identifying such Defendants by their true names and capacities.

4.      The Court has both diversity and federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1331.

5.      This Court has supplemental and/or pendent jurisdiction over the Idaho state law claims asserted herein pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the United States District Court for the District of Idaho pursuant to 28 U.S.C. § 1391(b)(2).

## II.

## FACTUAL ALLEGATIONS

5.      On or about 8 February 2013, Mr. Rosa purchased a new 2013 Hyundai Sonata (the "Vehicle") from Murdoch Hyundai in Murray, Utah.  A true and correct copy of the Vehicle Purchase and Loan Agreement is attached and incorporated hereto as "Exhibit 1."  The Vehicle was financed through Hyundai Motor Finance at a promotional rate of 1.99% and the loan term was sixty (60) months (the "Loan"). *See id.*

6.      In late April 2015 the vehicle was stolen in Salt Lake County, Utah while Mr. Rosa was away on business.  The theft was reported to law enforcement and Mr. Rosa's auto insurance company, GEICO.  A true and correct copy of the Geico Theft Questionnaire is attached and incorporated hereto as "Exhibit 2."

7.      The Vehicle was located by a law enforcement agency in late May or early June 2015.  Mr. Rosa was notified that the Vehicle had been located and that it had been moved to an impound facility in Utah County, Utah for storage.

8.      In late June 2015, Mr. Rosa retrieved the Vehicle from the impound facility and began driving it north on the I-15 freeway into Salt Lake City, Utah.

9.      A few minutes after Mr. Rosa began driving the Vehicle, it became apparent that it was damaged in some manner. There was a "knocking sound" coming from the engine compartment under the front hood and steering the vehicle was difficult. These problems did not exist the last time Mr. Rosa had driven the Vehicle prior to its theft.

10.     As a precaution, Mr. Rosa exited the freeway and drove the Vehicle to a shopping center in the Sugarhouse area of Salt Lake City that he was familiar with.  The center had a large parking lot that was rarely full.

11.     Mr. Rosa parked the Vehicle and turned off the ignition.  He then went into a store to obtain some paper towels to protect his hands while checking the oil and power steering fluid levels in the Vehicle.

12.     Mr. Rosa's inspection of the oil and power steering fluid levels did not yield any indication of a problem with the Vehicle.

13.     Mr. Rosa then closed the hood, turned the Vehicle on, and began to exit the parking lot area.  Within ten (10) of the engine igniting, the Vehicle began to shake violently.  Further, a series of powerful "banging" sounds began coming from the engine compartment.  Within another thirty (30) seconds, the Vehicle stopped responding to pressure from the accelerator/gas pedal.

14.     Mr. Rosa attempted to maneuver the Vehicle into a parking spot, with only partial success as it barely responded to steering input.  The Vehicle's engine then appeared to cease functioning as Mr. Rosa situated the Vehicle diagonally across three empty parking spots.  He then put the Vehicle's gear into "Park" and turned off the ignition.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** – Page 3

15.     Mr. Rosa then immediately placed a call to his automobile insurance company (GEICO) and then to the dealership from which he purchased the Vehicle (Murdock Hyundai). He gave a full account of the facts described above and was instructed to have the vehicle towed to the dealership for inspection.

16.     The vehicle was towed to the dealership, Murdock Hyundai, and examined by its Service Department.

17.     In July 2015, Murdock Hyundai's representatives informed Mr. Rosa that the engine must be replaced in its entirety due to some form of unknown damage.  Because the Vehicle was still covered under its original warranty, this process would be covered by that warranty.  The engine replacement process took several weeks and resulted in a loss of value in the Vehicle.

18.     From the date the Vehicle was purchased until the date the engine was replaced (including during the period of time when the Vehicle was stolen), Mr. Rosa (a) made all payments on the Vehicle Loan on time as they came due; (b) maintained uninterrupted insurance coverage on the Vehicle; (c) had all required periodic maintenance performed at Murdock Hyundai; and (d) maintained complete records of all the aforementioned activity.

19.     After repairs to the Vehicle's engine were allegedly completed, Mr. Rosa received custody of the Vehicle back from Murdoch Hyundai and drove it to his home in Boise, Idaho.

20.     The Vehicle's performance immediately began performing poorly in comparison to before it was stolen; notably, the transmission did not perform smoothly, the engine frequently produced "knocking" sounds, and steering alignment problems were constant. Mr. Rosa documented these problems in a series of four demand letters: one to GEICO and three to Hyundai, respectively.  A true and correct copy of the GEICO Demand Letter is attached and incorporated hereto as "Exhibit 3."  True and correct copies of the Hyundai Demand Letters are attached and

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** – Page 4

incorporated hereto as "Exhibit 4," "Exhibit 5," and "Exhibit 6."  However, Mr. Rosa was advised

by GEICO that such damage was not insured under his policy. Mr. Rosa received no response or

communication of any kind from Hyundai in response to the aforementioned Demand Letters.

21.     Mr. Rosa elevated this issue to Hyundai's corporate offices in the United States and

stopped making monthly payments until the matter was resolved.

22.     Hyundai refused to resolve the matter and failed to respond to Mr. Rosa's

correspondence.

23.     On or about 10 December 2015, Hyundai repossessed the Vehicle and subsequently

disposed of it.  The deficiency remaining on the Vehicle Loan at the time the Vehicle was

repossessed was approximately $13,051.67 according to written communication.

24.     In or around March 2017, Mr. Rosa was contacted by a collections attorney from

Meridian, Idaho who claimed to represent Hyundai Motor Financing, Inc. as Defendant was known

at the time.

25.     Over the course of several months, Mr. Rosa negotiated that matter of paying the

deficiency with Hyundai's counsel.  These communications included explaining the preceding

facts to the collections attorney.  In order to resolve the matter without further time and expense,

Mr. Rosa entered into a Settlement and Mutual Release Agreement, which was effective as of 27

July 2017 (the "Settlement Agreement").  A true and correct copy of the Settlement Agreement is

attached and incorporated hereto as "Exhibit 7."

26.     The terms of the Settlement Agreement provided for installment payments to be

made by Mr. Rosa toward a compromised,  discounted, balance.  In return, Hyundai would forbear

on any collection actions, provide a full accounting of payments made under the settlement, and

would make no further adverse/negative reporting of the Hyundai Loan to any credit reporting bureau. *See id.*

27.    In accordance with the Settlement Agreement, Mr. Rosa began making the contractually required and timely payments in the manner required, initially by U.S. Mail. However, several payments were either not received or not cashed.  Mr. Rosa therefore began sending payments by FedEx instead of the U.S. Mail.  He then routinely contacted Hyundai's counsel to inform him that settlement checks have been dispatched, often quoting the check numbers and the tracking numbers of the dispatch.

28.    Notwithstanding his timely submission of payments sent through verifiable means (i.e., FedEx), several of his checks were not processed.  In addition, Hyundai would regularly return checks to Mr. Rosa with a note stating that the checks were dated too far in the past to be processed despite their timely submission.

29.    While Mr. Rosa tendered timely, good faith performance under the Settlement Agreement and went so far as to ensure verifiable transmission of the payments due thereunder, Hyundai's internal processing activities resulted in performance becoming frustrated.  Two true and correct copies of representative examples of timely-sent checks are attached and incorporated hereto as "Exhibit 8," and "Exhibit 9."

30.    In early 2018, Mr. Rosa relocated to Arizona and attempted to contact Hyundai for the purpose of resolving the outstanding balance.  None of his letters, dispatched by both FedEx and facsimile were acknowledged.

31.    During the course of this correspondence, **Mr. Rosa submitted a check for the full balance due identified on his most recent credit report (at the time of submission) m and tendered the check with a demand letter**.  This transmittal was sent by FedEx and was reported

as delivered to Hyundai.  However, Hyundai never cashed the check, never responded to the letter or acknowledged its receipt.  **Hyundai refused to even accept full tender of the amount due despite numerous good faith efforts by Mr. Rosa to both (a) honor his obligation as a matter of personal and professional responsibility, and (b) to stop the erosion of his creditworthiness**.

32.     Between the time Mr. Rosa tendered a check for full payment of the amount reported by Hyundai as due and late 2020, demands on his personal and professional time became so intense that no time existed to commit to litigating the issue.

33.     However, starting in late 2020, Hyundai began, seemingly at random, to update its adverse reporting for the first time in over three years.  The balance due reported to the three major consumer credit reporting bureaus (Experian, Equifax, and TransUnion) increased as a result, and no explanation existed to justify this sudden change.

34.     Throughout the period between the repossession of the Vehicle and the date this Complaint was filed, Mr. Rosa was declined credit on the grounds of a serious delinquency reported to his credit reports or was extended credit at substantially higher interest rates than he would have been offered given his payment history to other creditors.  True and correct excerpts of Mr. Rosa's Credit Reports from the three reporting bureaus indicating Hyundai's adverse reporting are attached and incorporated hereto as "Exhibits 10, 11, and 12."

35.     Hyundai's adverse reporting was contractually prohibited under the Settlement Agreement.  However, Hyundai made performance impossible by its refusal to accept Mr. Rosa's timely submitted and received checks, rejecting/returning those checks, and even refusing a full tender of payment allegedly due as reported by Hyundai to the aforementioned credit bureaus.

36.     In a final effort to resolve the matter described above, Mr. Rosa dispatched a prelitigation demand to Hyundai, proposing a set of terms for resolution and advising that litigation would follow if the matter was not resolved.  This letter included an offer of further tender beyond the checks that have been submitted to Hyundai as of the date this final demand letter was transmitted. A true and correct copy of the Prelitigation Demand Letter is attached and incorporated hereto as "Exhibit 13."

37.     Mr. Rosa has, once again, received no response from Hyundai to his prelitigation demand.

38.     During the aforementioned period of time, Mr. Rosa made occasional telephone calls to Hyundai for the sake of attempting to ascertain the nature of the problem but could not receive an answer or even an acknowledgement of receipt of payments tendered and received by Hyundai.

39.     Mr. Rosa's creditworthiness is near flawless with the exception of the Hyundai reporting.  His credit monitoring services report a one-hundred percent (100%) on-time payment history.  The only delinquent payments in Mr. Rosa's distant past relate to delays in receipt of payment by other creditors, but have not affected his creditworthiness.

40.     The present Complaint is being filed as an act of final recourse given that Hyundai's business practices leave him no option but to invoke the dispute resolution provisions under the Settlement Agreement.

41.     Further, Hyundai's acts and omissions, as alleged above, constitute violations of the Federal Trade Commissions Act, set forth at 15 U.S.C. § 41 et seq.  ("FTCA"), Mr. Rosa intends to forward this Complaint and proof of each claim to the Federal Trade Commission

("FTC") for investigation and pursuit of those remedies available in matters that only the FTC may initiate and pursue.

## III.

### FIRST CAUSE OF ACTION

### Breach of Contract

42.     Mr. Rosa restates and realleges the preceding paragraphs as though fully set forth herein and further alleges:

43.     A valid, enforceable contract existed between Mr. Rosa and Hyundai in the form of a fully executed Settlement Agreement.

44.     Mr. Rosa performed his obligations under the Settlement Agreement by tendering timely payment to Hyundai in accordance with the terms of that agreement.  Mr. Rosa further performed his obligations under the Settlement Agreement by tendering full payment of an amount in excess of the compromised amount due under the early repayment provisions of the agreement.

45.     Hyundai breached the Settlement Agreement by (a) refusing to accept several of Mr. Rosa's payment, including both those payments that were returned, and (b) by continuing to make adverse reporting to the aforementioned credit bureaus.

46.     Further, Hyundai frustrated Mr. Rosa's performance under the Settlement Agreement by (a) rejecting the aforementioned payments and (b) refusing even to accept a full tender of the amount reported by Hyundai to the aforementioned credit bureaus.

47.     As a result, Hyundai has rendered performance under the Settlement Agreement impossible.

48.     These breaches caused damages to Mr. Rosa including, *inter alia*, the following: (a) damage to Mr. Rosa's creditworthiness; (b) increased cost of credit that Mr. Rosa has been able

to obtain; and (c) extensive loss of revenue as a result of nearly one-hundred hours of time and effort spent attempting to resolve the aforementioned problems, researching the legal issues attendant to the problems giving rise to this action; (d) legal fees and costs incurred as a consequence of filing the present action; and (e) other damages, in amounts subject to proof but exceeding $75,000.00.

## IV.

## SECOND CAUSE OF ACTION

### Slander of Credit

49.     Mr. Rosa restates and realleges the preceding paragraphs as though fully set forth herein and further alleges:

50.     Hyundai made statements to persons other than Mr. Rosa, namely, to the credit reporting agencies known as Equifax, Experian, and TransUnion.

51.     Hyundai's statements were intentional misrepresentations of fact to the effect that Mr. Rosa was delinquent in making payments under the Settlement Agreement.

52.     Mr. Rosa repeatedly submitted disputes of Hyundai's reporting to the aforementioned credit reporting agencies. All of these disputes were resolved in the same way: with Hyundai misrepresenting the status of Mr. Rosa's account, the amount due, and complete omission of both partial and full tender of payment of the amount alleged by Hyundai to be due and reported as such to said credit reporting agencies.

53.     Hyundai knew the statements were false, or reasonably should have known they were false because (a) Mr. Rosa made timely payments under the Settlement Agreement in accordance with the terms of submission set forth in that agreement; (b) Mr. Rosa tendered full

payment of payment of the amount alleged by Hyundai to be due and reported as such to said credit reporting agencies; and (c) Hyundai nevertheless continued to report the obligation as due.

54.     The information communicated in Hyundai's statements impugned the creditworthiness, honesty, integrity, and virtue of Mr. Rosa as both a private citizen, a businessman, and an attorney licensed to practice law in both Idaho and California.   Upon information and belief, the damage to Mr. Rosa's credit scores (which will be corroborated by expert testimony in this matter) amounts to a loss of approximately one-hundred (100) points: a difference that would render Mr. Rosa's true and correct creditworthiness as "excellent" instead of "good."

55.     Mr. Rosa suffered actual injury from the statements by having been denied credit for consumer purchases in an amount subject to proof and by ongoing injury to his credit scores. Further, Mr. Rosa is entitled to a retraction of all adverse reporting made by Hyundai to all credit reporting agencies, including (without limitation) the aforementioned credit reporting agencies known as Equifax, Experian, and TransUnion.

56.     Due to the reckless, wanton and gross negligence associated with Hyundai's conduct as alleged herein, Mr. Rosa requests an award of punitive damages to deter, dissuade and otherwise punish Hyundai for its dishonest conduct and misrepresentations of fact to the aforementioned credit reporting bureaus.

## V.

## THIRD CAUSE OF ACTION

## Declaratory Relief

## (Partial and Complete Discharge under Uniform Commercial Code § 3-603 [Idaho Code § 28-3-603])

57.     Mr. Rosa restates and realleges the preceding paragraphs as though fully set forth herein and further alleges:

58.     Mr. Rosa tendered the checks attached as Exhibits to this Complaint, which were returned by Hyundai for reasons not connected with his timely submission of the same as required by the Settlement Agreement.

59.     Mr. Rosa also tendered full payment in excess of the amount due under the Settlement Agreement with one of the demand letters submitted to Hyundai and delivered by FedEx.

60.     Hyundai refused to accept the partial tenders of installment payments due under the Settlement Agreement.

61.     Hyundai further refused to accept full tender of the installment payment due under the Settlement Agreement.

62.     By operation of Uniform Commercial Code § 3-603, as adopted by the State of Idaho and codified at Idaho Code § 28-3-603, Mr. Rosa is entitled to discharge of the entire balance due both under the Settlement Agreement and as reported by Hyundai.

63.     A substantial controversy of sufficient immediacy has arisen between Mr. Rosa and Hyundai regarding the tender of the full balance due to Hyundai under the Settlement Agreement, as Mr. Rosa continues to be denied credit due the Hyundai's refusal to accept tender.

64.     Mr. Rosa seeks a declaratory judgment that the balance due under the Settlement Agreement is both partially and completely discharged and that Hyundai is obligated to correct all historical and ongoing reporting to all relevant credit reporting agencies accordingly.

**VI.**

**FOURTH CAUSE OF ACTION**

**Injunctive Relief**

**[Temporary, Preliminary and Permanent]**

65.     Mr. Rosa restates and realleges the preceding paragraphs as though fully set forth herein and further alleges:

66.     Mr. Rosa will suffer irreparable injury in the absence of a preliminary injunction due to adverse reporting on his credit report rendering him unable to obtain favorable interest rates on business loans, mortgages, lines of credit and consumer credit products.

67.     Mr. Rosa is likely to succeed on the merits of his claims.  As a moderately successful attorney with a national clientele, who specializes in business transactions and commercial litigation, Mr. Rosa has maintained meticulous records supporting the facts alleged herein and anticipates filing a motion for summary judgment at soon as permitted by the Federal Rules of Civil Procedure and the Local Rules of this District.

68.     The balance of hardships tips in Mr. Rosa's favor.  Hyundai Capital America is a multi-billion Dollar subsidiary of a major international corporation.  Mr. Rosa, in comparison is an individual who relies on his creditworthiness to transact personal and professional business, and whose creditworthiness is an indication of personal honesty in his chosen profession.  The higher interest rates that Mr. Rosa has been forced to pay in order to transact certain matters has resulted in ongoing and future payments with a differential, on the basis of information and belief as calculated by rates available to persons with credit scores higher than his and all other income and debt-to-income ratios being equal) will result in his payment at least one-hundred thousand Dollars ($100,000.00) over the terms of such loans.

69.     Unless enjoined from both retroactively correcting its material misrepresentations and slander of Mr. Rosa's credit and permanently ceasing its ongoing false reporting of Mr. Rosa's

alleged liability, Hyundai will continue to inflict the aforementioned injury upon Mr. Rosa. This injury, both inflicted to date and continuing as of the date this Complaint is filed, constitutes irreparable injury. Such injury is demonstrated by Hyundai's documented acceptance of payments and rejection/refusal to accept such tender, and its refusal to acknowledge or respond to any communications by Mr. Rosa.

70.     The public interest favors the injunction because it will deter Hyundai from similar wrongs in the future and protect untold numbers of consumers from experiencing the same issues as Mr. Rosa.

## VII.

## ATTORNEY FEES AND COSTS

71.     In addition to all specific prayers for entitlement to awards of costs of suit, including attorneys' fees, Plaintiff is entitled to an award of its reasonable attorneys' fees, costs, and disbursements incurred in this matter as against Defendant pursuant to all applicable provisions of the Idaho Code including, without limitation, the "prevailing party or parties" provisions of Idaho Code § 12-121; and (b) all other applicable contractual and statutory entitlements.

## VIII.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

1.     For entry of a preliminary and permanent injunction compelling and/or prohibiting Defendant as specified herein (*see supra*) and as may be requested by any applications/motions presented to the Court during the pendency of this action.

2.     For entry of a declaratory judgment against Defendants in Plaintiff's favor.

3.     For an award of damages in an amount subject to proof.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** – Page 14

4.      For an award of Plaintiff's attorneys' fees, costs and disbursements incurred in this action under all applicable provisions of the Idaho Code, including (without limitation) Idaho Code §§ 12-120 and 12-121; and

5.   For such other and further relief as the Court may deem just and proper.


DATED: February 18, 2021                    Respectfully Submitted,

                                            For ROSA PLLC


                                            */s/ Mary S. Amschel*
                                            Mary S. Amschel
                                            Attorney for Plaintiff

# COMPLAINT FOR DAMAGES
# AND INJUNCTIVE RELIEF
# EXHIBIT 1

# COMBINATION TRADE-IN NOTICE & PAYOFF AUTHORIZATION

*(Completion of All Applicable "Blanks" is Required)*

**DEALER (called "Dealer"):**

Name: MURDOCK HYUNDAI MURRAY LLC     Phone: (801)262-6400     Fax: _____

Address: 4646 S State Street     City: Murray     State: UT     Zip: 84107

**CUSTOMER (called "Customer"):**

Name: ANGELO LUIGI ROSA     Co-Buyer: _____

Address: ▓▓▓▓▓▓▓▓     Address: _____

City: SALT LAKE CITY     State: UT     City: _____     State: _____

Zip: 84105     Phone (801)449-4400     Zip: _____     Phone: _____

Email: angelolrosa@me.com     Email: _____

**TRADE-IN VEHICLE INFORMATION (called the "Trade-In"):**

Year: 2012     Make: HYUNDAI     Model: ELANTRA

VIN: KMHDH4AE6CU390557

**ESTIMATED PAYOFF:**

**Customer** acknowledges that the payoff on the Trade-In described above is estimated to be $ 27,182.17 . If the actual payoff on the Trade-In is greater than that estimate, **Customer** will pay that difference to **Dealer** within seven (7) days after the date of this notice. Interest at _____% per annum will accrue on any delinquent amount due from **Customer**. If the actual payoff on the Trade-In is less than that estimate, **Dealer** will promptly refund that difference to **Customer**.

**PAYOFF VERIFICATION:**

Lienholder: WELLS FARGO DEALER SERVICES     Date Verified: 2 / 8 /20 13 Good Thru: 2 / 12 /20 13

Phone: (866)937-2886     Payoff: $ 27,182.17     Per diem: $ N/A

Spoke to: _____     Account #: N/A

Address: PO BOX 25341     City: SANTO ANO     State: CA     Zip: N/A

**PAYOFF AUTHORIZATION:**

By its signature below, **Customer** authorizes the above-referenced lienholder (called "**Lienholder**") to accept from **Dealer** the sum of $ 27,182.17 , being the total unpaid balance of **Customer's** loan, lease or other obligation on the Trade-In. Payment from **Dealer** may accompany this notice or will be sent within the time frame allowed by law. **Lienholder** is hereby instructed to release the title and all title-related documents to the **Dealer**, as instructed in UTAH CODE ANN. 41-3-402, or any successor statute.

**CUSTOMER TRADE-IN NOTICE & ACKNOWLEDGEMENT:**

On 2 / 8 /20 13 , **Customer** traded in to Dealer the Trade-In vehicle described above. **Dealer** hereby notifies **Customer** that the Trade-In is subject to an unpaid loan, lease or other obligation. By its signature below, **Customer** understands, acknowledges and agrees that **Customer** remains responsible for that unpaid loan, lease or other obligation despite trade-in to **Dealer** of the Trade-In.

Signature of Customer/Buyer: _____     Date: 2 / 8 /20 13

Signature of Customer/Co-Buyer: _____     Date: ___/___/20___

Signature of Dealer: _____     Date: 2 / 8 /20 13

© May 2010  Utah Automobile Dealers Registration Service Company

003275

# ODOMETER DISCLOSURE STATEMENT

Federal and State law require that you state the mileage upon transfer of ownership. Failure to complete, or providing a false statement, may result in fines and/or imprisonment.

I, MURDOCK HYUNDAI MURRAY LLC _____ (print name of transferor, or transferor's authorized agent) state that the odometer of the vehicle described below now reads:

**ODOMETER READING** ➡ | 200 | **(NO TENTHS)**

miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked.

Check one box only:

☐ I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.

☐ I hereby certify that the odometer reading is not the actual mileage.
**WARNING - ODOMETER DISCREPANCY.**

| MAKE | MODEL | BODY TYPE |
|------|-------|-----------|
| HYUNDAI | SONATA | 4DR SDN 2.4L AU |

| VEHICLE IDENTIFICATION NUMBER | YEAR |
|------|------|
| 5NPEC4AC4DH624101 | 2013 |

MURDOCK HYUNDAI MURRAY LLC

Transferor's or Authorized Agent's Signature (SELLER) | Printed Name of Company

4646 S State Street
Transferor's Address (Street)

Murray, UT 84107
City | State | Zip Code

| DATE OF STATEMENT |
| 02/08/13 |

ANGELO LUIGI ROSA

Transferee's Signature (BUYER) | Transferee's Printed Name

If Transferee is an Organization, Print Organization's Name ▇▇▇▇▇

Transferee's Address (Street)

SALT LAKE CITY, UT 84105
City | State | Zip Code

APPROVED U.A.D.A. - FORM 2003 (REV. 6-89)

**WELLS FARGO**

)4.

ble.

ne.

der.

# ODOMETER DISCLOSURE STATEMENT

Federal and State law require that you state the mileage upon transfer of ownership. Failure to complete, or providing a false statement, may result in fines and/or imprisonment.

I, ANGELO LUIGI ROSA _____ (print name of transferor, or transferor's authorized agent) state that the odometer of the vehicle described below now reads:

**ODOMETER READING** ➡ | 27,138 | **(NO TENTHS)**

miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked.

Check one box only:

☐ I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.

☐ I hereby certify that the odometer reading is not the actual mileage.
**WARNING - ODOMETER DISCREPANCY.**

| MAKE | MODEL | BODY TYPE |
|---|---|---|
| HYUNDAI | ELANTRA | 4DR SDN AUTO LT |

| VEHICLE IDENTIFICATION NUMBER | YEAR |
|---|---|
| KMHDH4AE5CU390557 | 2012 |

ANGELO LUIGI ROSA

| Transferor's or Authorized Agent's Signature (SELLER) | Printed Name of Company |

Transferor's Address (Street) ▮▮▮▮▮▮

SALT LAKE CITY, UT 84105

| City | State | Zip Code |

| DATE OF STATEMENT |
| 02/08/13 |

MURDOCK HYUNDAI MURRAY LLC

| Transferee's Signature (BUYER) | Transferee's Printed Name |
| MURDOCK HYUNDAI MURRAY LLC |

If Transferee is an Organization, Print Organization's Name
4646 S State Street

Transferee's Address (Street):
Murray, UT 84107

| City | State | Zip Code |

APPROVED U.A.D.A. - FORM 2003 (REV. 6-89)

# UTAH
## SECURE POWER OF ATTORNEY

**WARNING:** This form may be used only when title is physically held by lienholder or has been lost. This form must be submitted to the State by the person exercising Powers of Attorney. Failure to do so may result in fines and/or imprisonment.

### VEHICLE DESCRIPTION

| Vehicle Identification Number (VIN) | Year | Make | Model | Body Type |
|---|---|---|---|---|
|  |  |  |  |  |

### PART A. POWER OF ATTORNEY TO DISCLOSE MILEAGE

Federal law (and State law, if applicable) requires that you state the mileage upon transfer of ownership. Providing a false statement may result in fines and/or imprisonment.

I, _____ appoint _____ as my attorney-in-fact, to
        (Transferor's/Seller's Name, Print)         (Transferee's/Buyer's Name, Print)
sign all papers and documents required to secure the title and further grant the authority to endorse and transfer title thereto, and to disclose the mileage, for the vehicle described above, exactly as stated in my following disclosure.

Date of Statement _____

I state that odometer now reads _____ (NO TENTHS) miles and to the best of my knowledge that it reflects the actual mileage unless one of the following statements is checked:

☐ 1. I hereby certify that to the best of my knowledge the odometer reading reflects the mileage in excess of its mechanical limits.
☐ 2. I hereby certify that the odometer reading is NOT the actual mileage. **WARNING - ODOMETER DISCREPANCY**

| (Transferor's Signature) | (Printed Name) | (Co-Transferor's Signature) | (Printed Name) |
|---|---|---|---|

Transferor's Address _____
        (Street)         (City)         (State)         (Zip Code)

| (Transferee's Signature) | (Printed Name) | (Dealership Name) | (Dealer License Number) |
|---|---|---|---|

Transferee's Address _____
        (Street)         (City)         (State)         (Zip Code)

### PART B. POWER OF ATTORNEY TO REVIEW TITLE DOCUMENT AND ACKNOWLEDGE DISCLOSURE
(Part B in invalid unless Part A has been completed)

I, _____ appoint _____ as my attorney-in-fact, to
        (Transferee's/Seller's Name, Print)         (Transferee's/Buyer's Name, Print)
sign the mileage disclosure on the title for the vehicle described above, only if the disclosure is exactly as the disclosure completed below. The attorney-in-fact may endorse, release or transfer ownership documents as required by Utah statutes for the vehicle described above.

| (Transferee's Signature) | (Printed Name) | (Transferee's Address Street, City, State, Zip) |
|---|---|---|

Federal and State law require that you state the mileage upon transfer of ownership. Providing a false statement may result in fines and/or imprisonment.

Date of Statement _____

I, _____ (Transferor's name, PRINT) state that odometer now reads _____ (NO TENTHS) miles and to the best of my knowledge that it reflects the actual mileage unless one of the following statements is checked:

☐ 1. I hereby certify that to the best of my knowledge the odometer reading reflects the mileage in excess of its mechanical limits.
☐ 2. I hereby certify that the odometer reading is NOT the actual mileage. **WARNING - ODOMETER DISCREPANCY**

| (Transferor's Signature) | (Printed Name) | (Dealership Name) | (Dealer License Number) |
|---|---|---|---|

Transferor's Address _____
        (Street)         (City)         (State)         (Zip Code)

### PART C. CERTIFICATION  (To be completed if parts A and B have been completed)

I, _____ (person exercising above powers of attorney, PRINT), hereby certify that the mileage I have disclosed on the title document is consistent with that provided to me in the above power of attorney. Upon examination of the title and any reassignment documents for the vehicle described above, the mileage disclosure I have made on the title pursuant to the power of attorney is greater than that previously stated on the title and reassignment documents. This certification is not intended to create, nor does it create any new or additional liability under Federal or State law.

Signature _____ Printed Name _____ Date _____

_____
(Street)         (City)         (State)         (Zip Code)

See reverse side for special instructions

SELLER'S COPY

## WHEN TO USE THIS FORM

When the certificate of title is physically held by a lienholder or has been lost or destroyed and is not available for endorsement for transfer and odometer disclosure.

## INSTRUCTIONS

### PART A. POWER OF ATTORNEY TO DISCLOSE MILEAGE

(1)     PART A authorizes transferee (buyer/dealer) to transfer the odometer disclosure made by transferor (seller) on this form to the vehicle title when it is received from lienholder or duplicate title is received. PART A also appoints the dealership as attorney-in-fact to sign the seller's name to transfer the vehicle's title. PART B and C will not be used in this case.

### PART B. POWER OF ATTORNEY TO REVIEW TITLE DOCUMENT AND ACKNOWLEDGE DISCLOSURE

(1)     PART B is only used when vehicle is resold prior to receiving title from lienholder or receiving duplicate title, if permitted by law.

(2)     The buyer authorizes seller (dealer) to make the odometer disclosure on the title when it is received. Odometer disclosure made on the title must be exactly as the odometer disclosure made in PART B of this form. PART B also appoints the dealership as attorney-in-fact to sign the buyer's name to transfer the vehicle's title.

### PART C. CERTIFICATION

(1)     PART C is only used when both PART A and B of this form have been used.

(2)     PART C is completed once title is received from lienholder or duplicate title is received. Person exercising power of attorney certifies that the title and any reassignment documents have been received and reviewed and no mileage discrepancies exist.

## FILING OF COPIES

ORIGINAL - To be attached to the certificate of title when obtained and is to remain with the title until it is filed by the dealer making application for title for the buyer.
FIRST COPY - To be retained by the dealer for a period of five (5) years.
SECOND COPY - To be given to seller who completed the power of attorney in PART A.

EFFECTIVE MAY 3, 1993, A NOTARY SIGNATURE IS NOT REQUIRED ON ANY UTAH TITLE

**THIS FORM IS FEDERALLY MANDATED NATIONWIDE UNDER THE TRUTH IN MILEAGE ACT OF 1986 (PUBLIC LAW 99-579) AND TITLE IV OF THE PIPELINE SAFETY REAUTHORIZATION ACT OF 1988 (PUBLIC LAW 100-561).**

# Express Autogap

12G 1264267

This Guaranteed Asset Protection (GAP) Addendum amends the **Retail Installment Sales/Loan/Lease Contract** (hereafter referred to as the **"Contract"**). This GAP Addendum is between the **Customer/Borrower (I, You or Your)** and the Dealer/Financial Institution (**We, Us or Our**).

| Customer/Borrower | Dealer |
|---|---|
| ANGELO LUIGI ROSA | MURDOCK HYUNDAI MURRAY LLC |
| Address 1168 E 1700 S | Address 4646 S State Street |
| City SALT LAKE CITY, UT State 84105 Zip | City Murray, UT 84107 State Zip |
| Daytime (801) 530-7329 Evening Ph (801) 440-0400 | Ph (801) 262-6401 Fax: |

| Year | Make | Model | | VIN | Current Mileage |
|---|---|---|---|---|---|
| 2013 | HYUNDAI | SONATA | | 5NPEC4AC4DH624101 | 200 |

| Contract 02/08/13 | Total Down 4,700.00 $ | Mo. Payment 571.11 $ | Financial Institution/Lienholder Name HYUNDAI MOTOR FINANCE |
|---|---|---|---|
| XX Retail Installment Sales Contract/Loan Lease/Balloon Note | | Contract Term (Months) 72 | Address P. O. BOX 105299 |
| MSRP/NADA/Kelley Blue Book (CA only) Retail/(Used) Value 29,850.00 | | Amount Financed 36,351.53 | City ATLANTA, GA 30348 State Zip |
| Purchase GAP N/A | | GAP Purchase Price 795.00 | Tel (800) 523-4030 Contact |

**PLAN GUIDELINES**

Maximum Retail Installment Sales Contract/Loan Term: 84 Months; Maximum Lease Term: 60 Months; Maximum MSRP/NADA/Kelley Blue Book (CA Only) Retail: $100,000; Maximum Amount Financed/ Capitalized Cost: Lesser of $100,000 or 150% MSRP (New)/ 150% NADA/ Kelley Blue Book (CA Only) Retail (Used); Maximum Deductible Coverage (if permitted under state law): $1,000; Maximum Payable Loss: $50,000.

**AGREEMENT** - Although not required to do so, **You** have elected to participate in Our GAP Program. **GAP** does not take the place of insurance on the Covered Vehicle. **You** are responsible for maintaining collision and comprehensive insurance for the full value of the **Vehicle** and any other insurance as required by the **Contract** or applicable law. **You** are responsible for all notifications or claims that are required to be filed with **Your Primary Carrier**. **We** will not process or handle **Your** insurance claims for **You**. In the event of a **Total Loss** to the Covered Vehicle, **We** agree to waive **Our** rights against **You** for the amount due under a **Payable Loss**. **You** will remain responsible for payment of: (1) Any deductible amount under **Your Primary Carrier** insurance that is greater than the Maximum Deductible Coverage; and (2) Any portion of the **Amount Financed** or Capitalized Cost exceeding the lesser of $100,000 or 150% MSRP (New)/NADA/ Kelley Blue Book (CA only) Retail (Used) of the **Covered Vehicle** at the inception date of the **Contract**.

**ASSIGNMENT**: This GAP Addendum is between the **Customer/Borrower (I, You or Your)** and the Dealer/Financial Institution (We, Us or Our), or if assigned, with the assignee.

**YOUR RIGHT TO CANCEL**: To cancel GAP at any time, or in the event of the early termination of Your Contract with the Lienholder, You must provide written notice of this cancellation or early termination of Your Contract to the GAP Administrator, Us or the Lienholder within 90 days of Your decision to cancel or the occurrence of the event causing the early termination of Contract. If You notify the GAP Administrator, Us or the Lienholder within 30 days of the Date of Contract, You will receive a full refund/credit of the GAP Purchase Price. If You cancel after 30 days, You will receive a refund/credit of the unused portion of the GAP Purchase Price calculated by the Pro Rata method, or by the refund method as may be required by state or federal law, less a $50.00 cancellation fee (state restrictions apply). We will refund all charges to the Lienholder listed above; any refund of the purchase price for a waiver that was included in the financing of the motor vehicle may be applied by the creditor as a reduction to reduce the overall amount owed under the finance agreement, rather than applying the refund strictly to the purchase price of the waiver. GAP was included in the financing of the motor vehicle loan. If You do not receive the refund/credit within 60 days of notice of cancellation/termination, contact the Administrator at (800) 705-4001. This GAP Addendum will not be reinstated after a cancellation has been processed. In the event of a Total Loss, the GAP Purchase Price will be considered fully earned and no refund will be available (state exceptions apply).

**ENROLLMENT** - You may purchase GAP only at the time You sign Your Contract to purchase or lease the Vehicle from the dealer.  Neither the extension of credit, nor the terms of the related motor vehicle sale or lease, may be conditioned upon the purchase of GAP. GAP coverage may decrease over the term of Your Contract and may not extend for the full term of Your Contract. If the Amount Financed exceeds 150% of MSRP (New)/NADA/Kelley Blue Book (CA only) Retail (Used), at the inception date of the contract, this GAP Addendum may not cover the entire Unpaid Net Balance, see exclusion #7 for details. The GAP Purchase Price is not regulated by any governmental entity. It is Your responsibility to determine whether the cost for GAP is reasonable. You may wish to consult an alternative source to determine whether similar coverage may be obtained and at what cost. Notice: You may be able to obtain GAP coverage from your primary carrier.

**TERMINATION OF GAP ADDENDUM**: This GAP Addendum will terminate on the date that any of the following events occur: 1. The date Your Contract is scheduled to terminate 2. Upon payment in full of the **Contract** 3. Expiration of any redemption period following the repossession or surrender of the Covered Vehicle. In the event of repossession, the Lienholder must be the sole payee for all refunds. 4. In the event of a Total Loss or theft of the **Covered Vehicle**. 5. The date the Contract is prepaid or the **Contract** is refinanced. BY YOUR SIGNATURE(S) BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THIS WAIVER AND ITS PROVISIONS.  NO VERBAL REPRESENTATIONS HAVE BEEN MADE TO YOU THAT DIFFER FROM THESE PROVISIONS. YOU UNDERSTAND AND AGREE THAT YOUR ACCEPTANCE OR REJECTION OF THIS GAP ADDENDUM IS VOLUNTARY YOU ARE NOT REQUIRED TO PURCHASE GAP TO OBTAIN CREDIT OR FINANCING.     XX

Acceptance of Express AutoGAP ☐                                                                              02/08/13
I have reviewed the benefits with my dealer representative. I elect to purchase Express AutoGAP coverage.

2-14-2013

_____      _____          _____      _____
Customer's Signature       Date                                      Dealer's Signature         Date

Declination of Express AutoGAP ☐
I have reviewed the benefits with my dealer representative. I decline to purchase Express AutoGAP coverage.

_____      _____          _____      _____
Customer's Signature       Date                                      Dealer's Signature         Date

*Express Systems, Inc. Executive Offices, 11 Vanderbilt, Irvine, CA 92618 Telephone (800) 705-4001; Fax (949) 727-0393*

Original – Consumer          Yellow - GAP Administrator          Pink - Lender Lessor          Gold - Dealer

GAP-VS (08/11)                                                                                     LZX 79945

**DEFINITIONS: Actual Cash Value** (hereafter referred to as ACV) means the amount of the Claim or Damage as determined by the Primary Carrier settlement, in the event of a Total Loss, and does not include towing charges, rental fees, storage charges, administrative fees, salvage value, any prior damage deductions or any unpaid debt resulting from exclusions in the Primary Carrier insurance not included in this agreement. In the event of no Primary Carrier on the Date of Loss, ACV means the value as determined using the National Automobile Dealers Association (NADA) or Kelley Blue Book (CA only) Official Used Car Guide at the time of loss.

**Amount Financed** means the total "amount financed" in the original Contract.

**Capitalized Cost** means the total "adjusted capitalized cost" in the original Contract.

**Commercial Purposes** means carrying goods or passengers for compensation. This includes, but is not limited to, using a vehicle as a taxi, or for delivery or delivery services where compensation is provided for those services.

**Contract** means the Retail Installment Sales /Loan/Lease contract which represents the financing agreement between You and Us for the purchase or lease of a Covered Vehicle and which sets forth the terms, conditions, inception date and expiration date of the financing agreement.

**Covered Vehicle, Vehicle** means any four-wheel private passenger automobile, van, or light truck of less than 12,500 lbs. Gross Vehicle Weight Rating as described in the Contract and listed on page 1 of this GAP Addendum, utilized for personal purposes. This definition is subject to the Exclusions provisions.

**Customer/Borrower (I, You or Your)** means the natural person(s) named in the Contract and as listed on page 1 of this GAP addendum.

**Date of Contract** means the date You sign the Contract to purchase or lease Your Vehicle and the effective date of coverage as indicated on page 1 of this GAP addendum.

**Date of Loss** means the date on which Your Vehicle is reported stolen or incurs physical damage that is severe enough to constitute a Total Loss.

**Unpaid Net Balance** means Your outstanding balance as of the Date of Loss. This does not include unearned finance charges, unpaid insurance premiums, late or deferred payments and charges, delinquent payment, past due amounts, refundable portions of any cancelable add-ons such as service contracts, credit life insurance or pre-paid maintenance agreements. If your Finance Agreement has unequal payments, the unpaid balance will be determined by calculating an amortization schedule based on the following: increasing the term by the number of months deferred, applying the highest interest rate charged for Your Finance Agreement to the adjusted term, and considering the first payment due date as a month after the inception date. If Your Contract has unequal payments, the unpaid balance as of the Date of Loss will be determined by creating an amortization schedule, using the Amount Financed/Capitalized Cost at the applicable term and annual percentage rate present in the original Contract, to obtain equal monthly payments. In the event a Contract contains unequal payments, the Payable Loss will still be subject to all deductions, exclusions, conditions, and terms outlined in this GAP Addendum.

**Payable Loss** means the difference between the Unpaid Net Balance and the ACV of the Covered Vehicle on the Date of Loss. The Payable Loss will not exceed $50,000. Payable Loss includes the amount of Your Primary Carrier deductible up to $1,000 (if applicable).

**Primary Carrier** means the insurance company(ies) who provides physical damage coverage for the entire ACV of a Covered Vehicle or provides liability coverage for the entire ACV of Your Vehicle to any person who has caused the Covered Vehicle to incur a Total Loss, and for which that person is legally liable.

**Retail Value** means Manufacturer's Suggested Retail Price (MSRP) for new Vehicles and the NADA/ Kelley Blue Book (CA Only) Retail Value for pre-owned Vehicles as of the Date of Contract.

**Total Loss** means because of theft or accidental damage to Your Vehicle, one of the following occurs: i) Your Covered Vehicle is declared a Total Loss, or is declared stolen and not recovered within 30 days of the date of the theft, by Your Primary Carrier, or 2) no Primary Carrier insurance is in force and Your Covered Vehicle is stolen and not recovered within thirty (30) days of the date of the theft, or 3) no Primary Carrier insurance is in force and the total cost to repair Your Covered Vehicle as a result of an accident is greater than or equal to its ACV immediately before the accident as determined by the NADA or Kelley Blue Book (CA Only) Official Used Car Guide as of the Date of Loss.

**We, Us, Our** means the Dealer/Financial institution or any entity who subsequently purchases or accepts assignment of the Contract.

**EXCLUSIONS:** This GAP Addendum does not apply: 1. If the Vehicle to which this GAP Addendum refers is refinanced. 2. When the Date of Loss occurs prior to the Date of Contract or after the original Contract term. 3. To any loss arising out of any dishonest, fraudulent, criminal, illegal or intentional act and any act of gross negligence committed by You or permitted by You. 4. To any loss arising from fraud, material misrepresentation of fact or falsification of documents, conversion, embezzlement, or concealment by You or permitted by You. 5. To theft or damage to Your Vehicle that does not constitute a Total Loss. 6. To any losses that occur outside the continental United States of America, Alaska, Hawaii and Canada. 7. To any portion of the Amount Financed at the inception date of the Contract exceeding the lesser of $100,000 or 150% MSRP (New)/ 150% NADA/ Kelley Blue Book (CA Only) Retail (Used). 8. To any Retail Installment Sales Contract/ Loan Term that exceeds 84 Months or a Lease Term that exceeds 60 months. 9. To any losses arising out of lawful confiscation by civil authorities or the government, or repossession, of the Covered Vehicle. 10. To any losses resulting from any repairing, restoration, or remodeling process, structural, normal wear and tear, freezing, mechanical or electrical breakdown or failure unless fire or other accident ensues, and then only for the loss or damage caused by such fire or accident. 11. To any vehicle with a Retail Value of $100,000 or more at the origination of Your Contract, any vehicle which has a salvage title, any motorcycle, recreational vehicle, watercraft vehicles, to vehicles used for Commercial Purposes or vehicles weighing over 12,500 lbs. G.V.W.R. (Gross Vehicle Weight Restriction) 12. To losses resulting from a Covered Vehicle being operated, used, or maintained in any race, speed contest or competition. 13. To Your personal property that is attached to or within a Covered Vehicle. 14. If You voluntarily discard, leave behind, or otherwise relinquish possession, to the extent that it shows intent to forsake and desert the Covered Vehicle so that it may be appropriated by any other person. 15. Losses due to war, whether or not declared, invasion, insurrection, rebellion, revolution, or an act of terrorism

**TOTAL LOSS BENEFIT REQUEST PROCEDURES** In the event of a Total Loss, You must provide the following to the Express Systems, Inc Program Claims Administrator at P.O. Box 14300, Mesa, AZ, 85216, Phone (877) 705-4001, Fax (480) 897-7597: 1. A copy of Your Primary Carrier's settlement showing all additions and deductions for the settlement amount and a copy of Your Primary Carrier's check. If You do not have Primary Carrier insurance, a copy of the police report or accident report that identifies Your Vehicle by its vehicle identification number (VIN) must be submitted; 2. A copy of this GAP Addendum; 3. An entire copy, front and back, of the original Contract; 4. A copy of Your Primary Carrier's Declaration Page, listing the coverage, deductible and agent's phone number; 5. The name and address of the Lienholder and Your account number with the Lienholder; 6. The pay-off balance of Your Vehicle as calculated by the Lienholder at the Date of Loss; 7. A history of Your Contract showing all payments made, late charges and fees; 8. A copy of refund checks and/or authorized cancellation forms confirming the refund amount for any credit insurance, mechanical repair coverage or other similar products that were purchased and included in the financing or lease of the Covered Vehicle. (Contact the Dealer that sold You the coverage.); 9. For new Vehicles only, if available, a copy of the window sticker or Vehicle invoice showing the Manufacturer's Suggested Retail Price. (Contact the Dealer that sold or leased You the Vehicle.) Proof of loss must be submitted within ninety (90) days of the Date of Settlement by your primary insurance carrier or Date of Loss, if you do not have Primary Carrier Insurance, but in no event later than one year from the date proof was due as indicated above.

**STATE PROVISIONS:** All terms of this waiver are subject to state law. **Colorado:** The maximum fee that may be charged for this GAP Addendum cannot exceed $300 or 2% of the amount financed, whichever is higher. No cancellation fee may be charged. **Indiana:** This GAP Addendum cannot be sold in instances where the Amount Financed, less the cost of GAP, the cost of credit insurance, and the cost of warranties is less than 80% of MSRP or NADA/Kelley Blue Book (CA only). Please consult with the Department of Financial Institutions at 30 South Meridian St, Suite 300, Indianapolis IN 46204 for additional information or complaints. 1-800-382-4880. GAP cancellation fees are NOT authorized **Kansas:** ASSIGNMENT: This GAP Addendum will follow the Contract with no subrogation rights against the Customer/Borrower, if the Contract is sold or assigned by the Dealer/Financial institution. If GAP is not included in the finance charge, then the EXCLUSIONS section outlined above is removed and the only exclusion is due to the Customer's failure to maintain Primary Carrier insurance on the Covered Vehicle. GAP cancellation fees are NOT authorized **Louisiana:** If a benefit request is not paid within 60 days after complete proof of loss has been filed with the program administrator listed on this GAP Addendum or the Dealer where GAP was purchased, You may file Your benefit request with Virginia Surety directly at 175 West Jackson Blvd., Chicago, IL 60604 800-209-6206. No cancellation fee may be charged. **Maine:** This GAP Addendum is not available for leased vehicles. **Missouri and New Mexico:** No cancellation fee may be charged. **Nebraska:** This guaranteed asset protection addendum is not insurance and is not regulated by the Nebraska Department of Insurance. This guaranteed asset protection addendum remains part of the finance agreement upon assignment, sale, or transfer of such finance agreement to the creditor or the creditor's designee. **New Hampshire:** Our obligations under this GAP Addendum are insured by Virginia Surety Co. Inc., 175 West Jackson Blvd.,Chicago, IL 60604; Toll-free; 800-209-6206 In the event We cease to operate, are bankrupt or Your request for the waiver benefit provided by this GAP Addendum is not resolved within sixty (60) days after You have provided all required documentation for complete proof of loss, You may file a direct request for the waiver benefit with Virginia Surety Company, Inc. In the event You do not receive satisfaction under this GAP Addendum You may contact the New Hampshire Department of Insurance 21 South Fruit St. Concord, NH 03301 (800) 352-3416. **Utah:** A guaranteed asset protection waiver is subject to limited regulation by the Utah Insurance Department; and a complaint regarding a guaranteed asset protection waiver must be submitted to the Utah Insurance Department. **Washington:** Guaranteed asset protection waiver is not credit insurance nor does this waiver eliminate the borrower's obligation to insure the motor vehicle as is required by the laws of Washington. Further, the purchase of GAP does not eliminate the borrower's rights and obligations under the vendor single-interest and/or collateral protection coverage laws of Washington. **Wisconsin:** The Cancellation provision is deleted and replaced by: YOUR RIGHT TO CANCEL: To cancel GAP at any time, You must provide written notice of this cancellation to the GAP Administrator, Us or the Lienholder. If You cancel the GAP Addendum and it is terminated within 30 days of the Date of Contract, You will receive a full refund/credit of the GAP Purchase Price plus the amount of any applicable finance charges. If the GAP Addendum is cancelled or terminated after 30 days, You will receive a refund/credit of the GAP Purchase Price calculated by the Pro Rata method. We will refund all charges to the Lienholder listed above. If You do not receive the refund/credit within 60 days of notice of cancellation/termination, contact the Administrator at (800) 705-4001. This GAP Addendum will not be reinstated after a cancellation has been processed. If a gap benefit has been or will be paid, the GAP Purchase Price will be considered fully earned and no refund will be available. **Texas: If the claim is denied for one of the exclusions listed above and no debt is waived, we will provide a pro rata cancellation to You based on the date of loss minus a $50 cancellation fee.** Retail buyers of this contract may file a complaint with the Texas Office of Consumer Credit Commissioner at 2601 N. Lamar Blvd. Austin, TX 78705, 800-538-1579, www.occc.state.tx.us.

**SELLER/DEALER:**

# MOTOR VEHICLE CONTRACT OF SALE

02/08/13

DATE OF SALE:

MURDOCK HYUNDAI MURRAY LLC
4646 S State Street
Murray, UT 84107

PURCHASER'S NAME: ANGELO LUIGI ROSA

STREET ADDRESS: [redacted]

| CITY | COUNTY | STATE | ZIP CODE |
|---|---|---|---|
| SALT LAKE CITY, UT 84105 | | | |

RES. PHONE (801)448-4400    BUS. PHONE (801)530-7529

Purchaser and Co-Purchaser(s), if any, (hereafter referred to as "Purchaser") hereby agree to purchase the following vehicle from Seller/Dealer (hereafter referred to as "Seller"), subject to all terms, conditions, warranties and agreements contained herein, including those printed on the reverse side hereof.

| NEW | USED | DEMO | YEAR | MAKE | SERIES | BODY TYPE | COLOR |
|---|---|---|---|---|---|---|---|
| XX | | | 2013 | HYUNDAI SONATA | | 4DR SDN 2.4L AU | MIDNIGHT BLACK |

| V.I.N. | ODOMETER | STOCK NO. | DEL. DATE | SALESPERSON |
|---|---|---|---|---|
| 5NPEC4AC4DH624101 | 200 | HS25643 | 02/08/13 | SCOTT CHILD |

## PURCHASE PRICE AND OTHER SUMS DUE

| | |
|---|---|
| 1. CASH PRICE OF VEHICLE | 26,948.00 |
| 2. ACCESSORIES/OPTIONS | N/A |
| 3. EXPRESS MAINTENANCE | 448.00 |
| 4. | N/A |
| 5. | |
| 6. TOTAL CASH PRICE (add lines 1-5) | 27,396.00 |
| 7. MFR. REBATE $ | |
| 8. PORTION/REBATE APPLIED TO PURCHASE | ( 1,500.00 ) |
| 9. SUBTOTAL (lines 6 minus 8) | 25,896.00 |

## TRADE-IN AND/OR OTHER CREDITS

| YEAR/MAKE | ODOMETER |
|---|---|
| 2012 HYUNDAI | 27,138 |

| SERIES | BODY TYPE |
|---|---|
| ELANTRA | 4DR SDN AUTO LT |

V.I.N. KMHDH4AE6CU398557

*BALANCE OWED ON TRADE-IN: 27,182.17
BALANCE OWED TO: WELLS FARGO DEALER SERVICES
ADDRESS: PO BOX 25341
SANTA ANA, CA 92799-5341
PAYOFF GOOD
VERIFIED BY: UNTIL:
DATE OF
VERIFICATION ACC.#:

**\*WARRANTY AS TO BALANCE OWED ON TRADED-IN VEHICLE:** Purchaser warrants that he/she has given Seller a true pay-off amount on any vehicle traded in, and that if it is not correct and is greater than the amount shown above, Purchaser will pay the excess to Seller on demand.

| | | |
|---|---|---|
| 10. TRADE-IN ALLOWANCE | | 14,000.00 |
| 11. BALANCE OWED ON TRADE-IN* | | 27,182.17 |
| 12. NET ALLOWANCE ON TRADE-IN (line 10 minus line 11) | | 13,182.17- |
| 13. DEPOSIT/CASH DOWN PAYMENT (omit amt. line 8) | | 4,700.00 |
| 14. TOTAL CREDITS (total lines 12 & 13) | | 8,482.17- |
| 15. SUBTOTAL FROM LINE 9 | | 25,896.00 |
| 16. SERVICE CONTRACT | | N/A |
| 17. DEALER DOCUMENTARY SERVICE FEE | | 299.00 |
| 18. VEHICLE THEFT REG | | N/A |
| 19. SUBTOTAL-TAXABLE ITEMS (total lines 15-18) | | 26,195.00 |
| 20. TRADE ALLOWANCE ** (line 10) | 14,000.00 | **lease, no tax credit |
| 21. NET TAXABLE AMOUNT (line 19 minus line 20) $ | | 12,195.00 |
| 22. UTAH SALES/USE TAX ON "TAXABLE AMOUNT" | | 835.36 |
| 23. UTAH LICENSE AND REGISTRATION FEES | | 78.50 |
| 24. UTAH AGE BASED/PROPERTY ASSESSMENT FEES | | 150.00 |
| 25. UTAH INSPECTION/EMISSIONS TEST FEE | | 5.00 |
| 26. UTAH WASTE TIRE RECYCLING FEE | | |
| 27. Temp Permit | | 13.50 |
| 28. GAP INS. | | 795.00 |
| 29. TOTAL OF ALL ITEMS ABOVE (lines 19, 22-28) | | 28,517.36 |
| 30. TOTAL CREDITS (line 14) | | ( 8,482.17- ) |
| **31. BALANCE DUE** (total line 29 minus 30) | | 36,551.53 |

DAY 3 MONTH 2 YEAR 3

Purchaser has arranged insurance on vehicle through _____ GEICO _____ insurance company. Policy # _____

---

**THIS SECTION FOR SELLER'S USE ONLY PERTAINING TO TRADE-IN**

☐ Title (if not, explain): _____

| REGISTRATION | POWER OF ATTORNEY | ODOMETER STATEMENT | TRADE-IN APPRAISAL | AUTHORIZATION FOR PAYOFF | MANUFACTURED OUT OF COUNTRY |
|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

### NOTICE ONLY TO BUYERS OF USED VEHICLES

The information you see on the window form [Buyer's Guide] for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

I HAVE RECEIVED A COPY OF THE FTC BUYERS GUIDE.

X _____

### FINANCING DISCLOSURE

INSTRUCTION: One of the two following disclosures, either "A" or "B", must be acknowledged, if Purchaser agrees to be responsible for financing, or if this is a cash-only or cash-plus-trade-in only transaction, the Purchaser must sign disclosure "A". If Seller agrees to arrange for financing, then both Seller and Purchaser must sign disclosure "B". BY SIGNING DISCLOSURE 'B', DO NOT SIGN UNTIL ALL BLANKS HAVE BEEN FILLED IN. PURCHASER ACKNOWLEDGES THAT THE TERMS SET FORTH BELOW ('A') AND ('B') ARE MANDATED BY STATE LAW AND ARE NOT TO BE CONSTRUED AS CONTRACTUAL TERMS BETWEEN SELLER AND PURCHASER.

### PURCHASER AGREES TO ARRANGE FINANCING

**"(A)"** THE PURCHASER OF THE MOTOR VEHICLE DESCRIBED IN THIS CONTRACT ACKNOWLEDGES THAT THE SELLER OF THE MOTOR VEHICLE HAS MADE NO PROMISES, WARRANTIES, OR REPRESENTATIONS REGARDING SELLER'S ABILITY TO OBTAIN FINANCING FOR THE PURCHASE OF THE MOTOR VEHICLE. FURTHERMORE, PURCHASER UNDERSTANDS THAT IF FINANCING IS NECESSARY IN ORDER FOR THE PURCHASER TO COMPLETE THE PAYMENT TERMS OF THIS CONTRACT ALL THE FINANCING ARRANGEMENTS ARE THE SOLE RESPONSIBILITY OF THE PURCHASER.

SIGNATURE OF PURCHASER _____

### SELLER AGREES TO SEEK ARRANGEMENTS FOR FINANCING

**"(B)"** (1) THE PURCHASER OF THE MOTOR VEHICLE DESCRIBED IN THIS CONTRACT HAS EXECUTED THE CONTRACT IN RELIANCE UPON THE SELLER'S REPRESENTATION THAT SELLER CAN PROVIDE FINANCING ARRANGEMENTS FOR THE PURCHASE OF THE MOTOR VEHICLE. THE PRIMARY TERMS OF THE FINANCING ARE AS FOLLOWS:

INTEREST RATE BETWEEN 0.10 % AND 7.90 % PER ANNUM, TERM BETWEEN 60.00 MONTHS AND 84.00 MONTHS. MONTHLY PAYMENTS BETWEEN $ 551.11 PER MONTH AND $ 591.11 PER MONTH BASED ON A DOWN PAYMENT OF $ 5,200.00 INCLUDES ALL REBATES

(2) (a) IF SELLER IS NOT ABLE TO ARRANGE FINANCING WITHIN THE TERMS DISCLOSED, THEN SELLER MUST, WITHIN SEVEN CALENDAR DAYS OF THE DATE OF SALE MAIL NOTICE TO THE PURCHASER THAT HE HAS NOT BEEN ABLE TO ARRANGE FINANCING.
(b) PURCHASER THEN HAS 14 DAYS FROM THE DATE OF SALE TO ELECT, IF PURCHASER CHOOSES, TO RESCIND THE CONTRACT OF SALE PURSUANT TO UTAH CODE ANN.) SECTION 41-3-401.
(c) IN ORDER TO RESCIND THE CONTRACT OF SALE, THE PURCHASER SHALL:
(i) RETURN TO SELLER THE MOTOR VEHICLE; AND,
(ii) PAY THE SELLER AN AMOUNT EQUAL TO THE STANDARD MILEAGE RATE FOR THE COST OF OPERATING A MOTOR VEHICLE ESTABLISHED BY THE FEDERAL INTERNAL REVENUE SERVICE FOR EACH MILE THE MOTOR VEHICLE HAS BEEN DRIVEN; AND
(iii) COMPENSATE SELLER FOR ANY PHYSICAL DAMAGE TO THE MOTOR VEHICLE.
(3) IN RETURN, SELLER SHALL GIVE BACK TO THE PURCHASER ALL PAYMENTS OR OTHER CONSIDERATION PAID BY THE PURCHASER, INCLUDING ANY DOWN PAYMENT AND ANY MOTOR VEHICLE TRADED IN.
(4) IF THE TRADE-IN HAS BEEN SOLD OR OTHERWISE DISPOSED OF BEFORE THE PURCHASER RESCINDS THE TRANSACTION, THEN THE SELLER SHALL RETURN TO THE PURCHASER A SUM EQUIVALENT TO THE ALLOWANCE TOWARD THE PURCHASE PRICE GIVEN BY THE SELLER FOR THE TRADE-IN, AS NOTED IN THE DOCUMENT OF SALE.
(5) IF PURCHASER DOES NOT ELECT TO RESCIND THE CONTRACT OF SALE AS PROVIDED IN SUBSECTION (2)(b) OF THIS FORM:
(a) THE PURCHASER IS RESPONSIBLE FOR ADHERENCE TO THE TERMS AND CONDITIONS OF THE CONTRACT OR RISKS BEING FOUND IN DEFAULT OF THE TERMS AND AGREEMENT; AND
(b) IF THE TERMS AND CONDITIONS OF THE DISCLOSURES SET FORTH IN SECTION (1) OF THIS FORM ARE NOT BINDING ON THE SELLER; AND
(c) IF FINANCING IS NECESSARY FOR THE PURCHASER TO COMPLETE THE PAYMENT TERMS OF THE CONTRACT OF SALE, THE PURCHASER IS SOLELY RESPONSIBLE FOR MAKING ALL THE FINANCING ARRANGEMENTS.
(6) SIGNING THIS DISCLOSURE DOES NOT PROHIBIT THE PURCHASER FROM SEEKING HIS OWN FINANCING.

SIGNATURE OF PURCHASER _____
SIGNATURE OF SELLER _____

### OTHER TERMS AGREED TO:

NONE ☐     AS FOLLOWS ☒

N/A
N/A
N/A

---

**SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO THE MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR OTHERWISE CONCERNING THE VEHICLE, PARTS OR ACCESSORIES DESCRIBED HEREIN. UNLESS OTHERWISE INDICATED BY SELLER IN WRITING, ANY WARRANTY IS LIMITED TO THE MANUFACTURER'S WARRANTY, IF ANY, AS EXPLAINED AND CONDITIONED BY PARAGRAPH 4 ON THE REVERSE SIDE HEREOF.**

This Contract includes all of the terms, conditions, restrictions, limitations and other provisions on both the face and the reverse side hereof. This Contract cancels and supersedes any prior contract and as of the date hereof comprises the complete and exclusive statement of the terms of the Contract relating to the subject matters covered hereby. PURCHASER BY HIS EXECUTION OF THIS CONTRACT ACKNOWLEDGES THAT HE HAS READ ITS TERMS, CONDITIONS AND WARRANTIES BOTH ON THE FACE AND THE REVERSE SIDE HEREOF AND HAS RECEIVED A TRUE COPY OF THIS CONTRACT, AND FURTHER AGREES TO PAY THE "BALANCE DUE" AS SET FORTH ABOVE ON OR BEFORE THE DATE SPECIFIED. IF NO DATE IS SPECIFIED, THEN THE BALANCE IS DUE AS OF THE DATE OF THIS CONTRACT. THIS CONTRACT IS NOT RECEIPT OF PAYMENT. NO RETURNS, REFUNDS OR EXCHANGES ARE PERMISSIBLE EXCEPT AS NOTED ABOVE.

SIGNATURE OF PURCHASER _____ DATE 02/08/13

SIGNATURE OF CO-PURCHASER _____ DATE

VEHICLE TO BE TITLED IN NAME OF ANGELO LUIGI ROSA

SIGNATURE OF SELLER _____ DATE 2/08/13

APPROVED UADA FORM 1088 REV. 2-2009     TO REORDER CALL 484-8845 OR 1-800-594-8920

IT IS FURTHER UNDERSTOOD AND MUTUALLY AGREED:

The provisions on the reverse side of this contract are subject to the following additional terms, conditions, and warranties:

1. Purchaser promptly shall deliver to Seller (a) the original bill of sale and the title to any used vehicle taken in trade hereunder, and (b) the trade-in vehicle in the same condition and containing the same equipment as when appraised, excepting only reasonable wear and tear. Purchaser warrants such trade-in vehicle to be his sole property free and clear of all liens and encumbrances except as otherwise noted on the reverse side hereof.

2. If Purchaser does not pay the "BALANCE DUE" by the date indicated on the reverse side of this contract, then Seller may set off against its damages any cash deposit or down payment received from Purchaser. In the event a vehicle has been taken in trade, Purchaser authorizes Seller to sell the trade-in vehicle, and Seller shall be entitled to reimburse itself out of the proceeds of such sale for its expenses and losses incurred or suffered as the result of Purchaser's failure to complete the purchase.

3. Seller shall not be liable for delays or damages caused by the manufacturer, accidents, sureties, fires, or other causes beyond Seller's control.

4. NO WARRANTIES, EXPRESS OR IMPLIED, ARE MADE OR WILL BE DEEMED TO HAVE BEEN MADE BY EITHER SELLER OR THE MANUFACTURER OF ANY NEW MOTOR VEHICLE OR MOTOR VEHICLE CHASSIS FURNISHED HEREUNDER, EXCEPTING ONLY THE CURRENT PRINTED WARRANTY APPLICABLE TO SUCH VEHICLE OR VEHICLE CHASSIS, WHICH WARRANTY IS INCORPORATED HEREIN AND MADE A PART HEREOF AND A COPY OF WHICH WILL BE DELIVERED TO PURCHASER AT THE TIME OF DELIVERY OF THE NEW MOTOR VEHICLE OR MOTOR VEHICLE CHASSIS. SUCH WARRANTY SHALL BE EXPRESSLY IN LIEU OF ANY OTHER WARRANTY, EXPRESS OR IMPLIED, CONCERNING SUCH VEHICLE, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE, AND THE REMEDIES SET FORTH IN SUCH WARRANTY SHALL BE THE ONLY REMEDIES AVAILABLE TO ANYONE WITH RESPECT TO SUCH NEW MOTOR VEHICLE OR MOTOR VEHICLE CHASSIS.

SIMILARLY, NO WARRANTIES, EXPRESS OR IMPLIED, ARE MADE BY SELLER WITH RESPECT TO ANY USED MOTOR VECHICLE OR MOTOR VEHICLE CHASSIS FURNISHED HEREUNDER EXCEPT AS MAY BE EXPRESSED IN WRITING BY SELLER FOR SUCH USED MOTOR VEHICLE OR MOTOR VEHICLE CHASSIS, WHICH WARRANTY, IF SO EXPRESSED IN WRITING, IS INCORPORATED HEREIN AND MADE A PART HEREOF.

5. If the vehicle sold to Purchaser hereunder is a used or demonstrator vehicle, no warranty or representation is made by Seller as to the extent such vehicle has been used, regardless of the mileage shown on the odometer of said vehicle.

6. If it becomes necessary for Seller to enforce any of the provisions of this contract, Purchaser shall pay Seller's reasonable attorney's fees, court costs, and collection fees, whether they are incurred with or without suit, at trial, on appeal, or in any bankruptcy or insolvency proceeding. Collection fees hereunder are imposed in accordance with Utah Code Ann. §12-1-11, and shall comply with all applicable laws.

7. Purchaser may not transfer, assign, or delegate his rights or duties under this contract without Seller's prior written consent.

8. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.

9. Purchaser represents that he is 18 years of age or older.

10. Purchaser grants to Seller a security interest in the purchased vehicle and in any proceeds derived from the sale of the purchased vehicle to secure full payment of the purchase price. This security interest also covers all equipment, accessories, and parts that are added to the vehicle. Purchaser also grants to Seller a security interest in the proceeds of any physical damage insurance policy applicable to the purchased vehicle. Purchaser also grants to Seller a security interest in the purchased vehicle to secure Seller's right to recover any losses proximately caused by Purchaser's breach of any provisions of this contract.

11. If the purchased vehicle is a used vehicle, the information shown on the window form (Buyer's Guide) for the vehicle is part of this contract. Information on the window form overrides any contrary provisions in this contract.

12. IN THE CASE OF ANY VEHICLE TRADED IN AS PART OF THE CONSIDERATION TOWARD A PURCHASE, PURCHASER REPRESENTS AND WARRANTS:

(a) THAT, UNLESS OTHERWISE DISCLOSED ON THE REVERSE SIDE HEREOF, POLLUTION CONTROL EQUIPMENT, AIR BAGS, AND ALL SAFETY-RELATED EQUIPMENT INSTALLED BY THE MANUFACTURER HAS NOT BEEN REMOVED OR RENDERED INOPERATIVE;

(b) THAT THE YEAR OF MANUFACTURE AND THE BALANCE OWED ON THE TRADE-IN VEHICLE ARE AS STATED ON THE REVERSE SIDE HEREOF;

(c) THAT, UNLESS OTHERWISE DISCLOSED ON THE REVERSE SIDE HEREOF, THE ODOMETER READING ACCURATELY STATES THE ACTUAL MILES THE TRADE-IN VEHICLE HAS BEEN DRIVEN;

(d) THAT PURCHASER HAS AND WILL PROVIDE TO SELLER GOOD TITLE TO THE TRADE-IN VEHICLE, AND THAT TRANSFER OF THE TRADE-IN VEHICLE TO SELLER AS A TRADE-IN ON THE PURCHASE OF ANOTHER VEHICLE IS LEGAL AND PROPER;

(e) THAT THE TRADE-IN VEHICLE HAS NEVER HAD ITS TITLE OR REGISTRATION BRANDED AS "SALVAGED", "RESTORED", "REPAIRED", OR SIMILAR TERM, PURSUANT TO UTAH CODE ANN. §41-1A-1004 AND §41-1A-1005. ANY SUCCESSOR STATUTE(S), OR STATUTE(S) OF ANOTHER STATE SUBSTANTIALLY SIMILAR IN CONTENT. IF PURCHASER BREACHES THIS REPRESENTATION AND WARRANTY, THEN PURCHASER SHALL BE LIABLE FOR AND PAY TO SELLER THE DIFFERENCE BETWEEN THE TRADE-IN ALLOWANCE STATED ON THE REVERSE SIDE HEREOF AND THE REDUCED VALUE ATTRIBUTABLE TO MISREPRESENTATION REGARDING THE TITLE OR REGISTRATION;

(f) THAT THE TRADE-IN VEHICLE WAS NOT KNOWINGLY INITALLY DELIVERED FOR DISPOSITION OR SALE IN A COUNTRY OTHER THAN THE UNITED STATES OF AMERICA; AND

(g) THAT, TO THE EXTENT THAT A MANUFACTURER'S WARRANTY REMAINS IN EFFECT, NO MODIFICATION HAS BEEN MADE TO THE TRADE-IN VEHICLE THAT WOULD INVALIDATE OR DIMINISH SUCH WARRANTY.

13. Any written notice required to be given to Purchaser shall be deemed reasonable and effective notification if it is mailed by ordinary mail, postage prepaid, to Purchaser's mailing address stated on the reverse side hereof.

14. The rate of interest set forth in section (B) of the "Financing Disclosure" on reverse side may involve a variable rate, if therein noted. Purchaser will rely on any credit agreement representing financing to provide the credit disclosures required by law, including disclosures regarding variable rates of interest, which shall control any and all financial disclosures in this contract. Purchaser acknowledges that Seller may or may not receive income for arranging financing under section (B) of said "Financing Disclosure".

15. All information Seller requests or receives hereunder may be used to verify Purchaser's identity in accordance with the U. S. Patriot Act.

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number _____   Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| ANGELO LUISI ROSP [illegible] SALT LAKE CITY, UT 84105 | N/A N/A N/A | MURDOCK HYUNDAI MURRAY LLC 4646 S State Street Murray, UT 84107 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| NEW | 2013 | HYUNDAI SONATA | 5NPEB4AC4DH582401 | ☐ personal, family or household  ☐ business  ☐ agricultural  ☐ _____ |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 0.00 is |
|---|---|---|---|---|
| 3.900 % | $ 4,568.39 | $ 36,551.53 | $ 41,119.92 | $ 41,119.92 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 571.11 | Monthly beginning 03/25/13 |

Or As Follows: _____

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ __30__ or __5__ % of the part of the payment that is late, whichever is _____greater_____.

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**
### Optional Credit Insurance

☐ Credit Life  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability (Buyer Only)

Premium:
Credit Life $ _____
Credit Disability $ ____N/A____
Insurance Company Name ____N/A____
Home Office Address ____N/A____

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance

☐ _____  _____
  Type of Insurance  Term
Premium $ ____N/A____
Insurance Company Name ____N/A____
Home Office Address ____N/A____

☐ _____  _____
  Type of Insurance  Term
Premium $ ____N/A____
Insurance Company Name ____N/A____
Home Office Address ____N/A____

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _____  03/08/13
Buyer Signature  Date

X _____  02/08/13
Co-Buyer Signature  Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE.**

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1 Cash Price (including $ 635.35 sales tax) | | $ 28,223.36 (1) |
| 2 Total Downpayment = | | |
| Trade-In 2013 HYUNDAI ELANTRA | | |
| (Year) (Make) (Model) | | |
| Gross Trade-In Allowance | $ 4,702.00 | |
| Less Pay Off Made By Seller | $ 27,126.17 | |
| Equals Net Trade In | $ 5,152.17- | |
| + Cash | $ 4,700.00 | |
| + Other REBATE | $ 1,500.00 | |
| (If total downpayment is negative, enter "0" and see 4I below) | | $ N/A (2) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | | $ 28,223.36 (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf | | |
| (Seller may keep part of these amounts): | | |
| A Cost of Optional Credit Insurance | | |
| Paid to Insurance Company or Companies. | | |
| Life | $ N/A | |
| Disability | $ N/A | $ N/A |
| B Vendor's Single Interest Insurance | | |
| Paid to Insurance Company | | $ N/A |
| C Other Optional Insurance Paid to Insurance Company or Companies | | $ N/A |
| D Optional Gap Contract | | $ 795.00 |
| E Official Fees Paid to Government Agencies | | |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| F Government Taxes Not Included in Cash Price | | $ N/A |
| G Government License and/or Registration Fees | | |
| to N/A | | $ 235.00 |
| H Government Certificate of Title Fees | | $ N/A |
| I Other Charges (Seller must identify who is paid and describe purpose) | | |
| to WELLS FARGO DEALER for Prior Credit or Lease Balance | $ 6,833.17 | |
| to MURDOCK HYUNDAI M for Document Fee | $ 399.00 | |
| to N/A for N/A | $ N/A | |
| to STATE OF UT for Tire Tax | $ 5.00 | |
| to N/A for N/A | $ N/A | |
| to N/A for N/A | $ N/A | |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 8,328.17 (4) |
| 5 Amount Financed (3 + 4) | | $ 36,551.53 (5) |

1.  FINANCE CHARGE AND PAYMENTS
    a.  **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
    b.  **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
    c.  **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
    d.  **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
    e.  **Right to Refinance a Balloon Payment.** A balloon payment is a scheduled payment which is more than twice as large as the average of your earlier scheduled payments. If you are purchasing the vehicle primarily for your personal, family, or household use, you may have the right to refinance the amount of a balloon payment when it is due. The terms of the refinancing will be no less favorable to you than those offered by us for the same type of credit at the time your request for refinancing is accepted.

2.  YOUR OTHER PROMISES TO US
    a.  **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
    b.  **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
    c.  **Security interest.**
        You give us a security interest in:
        -  The vehicle and all parts or goods put on it;
        -  All money or goods received (proceeds) for the vehicle;
        -  All insurance, maintenance, service, or other contracts we finance for you; and
        -  All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
        This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.
    d.  **Insurance you must have on the vehicle.**
        You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
    e.  What happens to returned insurance, maintenance, service, or other contract charges. If we get

3.  IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES
    a.  **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
    b.  **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe in this contract at once. Default means:
        -  You do not pay any payment on time;
        -  You give false, incomplete, or misleading information on a credit application;
        -  You start a proceeding in bankruptcy or one is started against you or your property; or
        -  You break any agreements in this contract.
        The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
    c.  **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's reasonable fee and court costs, as the law allows. You will also pay any collection cost we incur as the law allows.
    d.  **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
    e.  **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
    f.  **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
        We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
    g.  **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4.  WARRANTIES SELLER DISCLAIMS
    **Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
    This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5.  **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
    **Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda**



# Express Maintenance Value Plan


EXPRESS SYSTEMS INCORPORATED

| | CONTRACT NUMBER |
|---|---|
| | 12M **1171911** |

## CONTRACT INFORMATION

| CONTRACT HOLDER | | | EMAIL | |
|---|---|---|---|---|
| ANGELO LUIGI ROSA | | | angelolrosa@me.com | |

| ADDRESS | CITY, STATE, ZIP | PHONE |
|---|---|---|
| ▮ | SALT LAKE CITY, UT 84105 | (801)440-4400 |

| YEAR | MAKE | MODEL | VIN |
|---|---|---|---|
| 2013 | HYUNDAI | SONATA | 5NPEC4AC4DH624101 |

| DEALERSHIP NAME | | DEALER # |
|---|---|---|
| MURDOCK HYUNDAI MURRAY LLC | | 7277 |

| DEALERSHIP ADDRESS | CITY, STATE, ZIP | SERVICE DEPT. TELEPHONE NUMBER |
|---|---|---|
| 4646 S State Street | Murray, UT 84107 | (801)262-6401 |

| LEINHOLDER | LEINHOLDER ADDRESS |
|---|---|
| HYUNDAI MOTOR FINANCE | P.O.BOX 105299 ATLANTA, GA 30348 |

## TERM

**CHECK BOX TO SELECT COVERAGE:**

☒ **Class 1**
*Standard Gas Vehicles*

☐ **Class 2**
*Synthetic Oil / Hybrid Vehicles*

☐ **Class 3**
*Diesel Vehicles*

☐ **2 Years / 5 Intervals**          ☐ **3 Years / 8 Intervals**

☒ **4 Years / 11 Intervals**          ☒ **5 Years / 14 Intervals**

Cost: _____

## Maintenance Services Include:

- Lube, Oil and Filter Change at each Interval
- Multi-Point Inspection at each Interval
- Tire Rotation at every other Interval

**CONTRACT COVERAGE TERM:**  Coverage begins on the Purchase Date shown below and expires per the coverage box checked above, either 2, 3, 4 or 5 year from the purchase date or whenever all services have been redeemed, whichever occurs first.

**CONTRACT HOLDER:  I understand that this contract is between me and the selling dealership and all services must be performed at the dealership listed above.**  I also acknowledge that this Express Carefree Maintenance Plan is not an insurance policy or warranty, nor does it provide services beyond those outlined within this contract.  By your signature below you agree that the plan and the actual services have been reviewed by you and that you accept its terms and conditions.

| | |
|---|---|
| _(signature)_ | 02/08/13 |
| CONTRACT HOLDER'S SIGNATURE | DATE |
| _(signature)_ | 02/08/13 |
| DEALERSHIP REPRESENTATIVE'S SIGNATURE | DATE |

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
EXHIBIT 2**



**GEICO General Insurance Company**

Attn: Region IV Claims, PO Box 509119
San Diego, CA 92150-9914

4/26/2015

Angelo Rosa
Boise, ID 83701-1605

| Company Name: | Geico General Insurance Company |
| Claim Number: | 033194405-0101-111 |
| Loss Date: | Saturday, April 25, 2015 |
| Policyholder: | Angelo Rosa |

Dear Angelo Rosa,

I am sorry to hear about your recent loss. I will be the adjuster handling the investigation of your claim. Enclosed you will find a questionnaire. If you have a police report, please send a copy along with the completed questionnaire.

**THIS QUESTIONNAIRE NEEDS TO BE COMPLETED AND RETURNED BEFORE WE CAN CONTINUE PROCESSING YOUR CLAIM.**

We ask that you provide documentation of the mileage on the vehicle. Any receipts from recent work done to the vehicle or recent oil change receipts will suffice.

It is very important that you complete the questionnaire and return it to me within five (5) days of receipt. Upon receipt of the completed questionnaire, we will be able to process your claim.  If you have any questions, please feel free to contact me at the number listed below.

Sincerely,

Leopoldo Valenzuela, Examiner Code D4T9
1-866-729-5201 x2524
Claims Department

Encl:    SHC116ID, Return Envelope

EC0122 (07/2014)

**GEICO General Insurance Company**

**Vehicle Theft Questionnaire**
**(Please complete even if vehicle is recovered)**

| | |
|---|---|
| Claim Number | 033194405-0101-111 |
| Policy Number | 4244694529 |
| Date of Loss | April 25, 2015 |

**POLICYHOLDER AND OWNER INFORMATION**

Name of Insured/Owner: _____   Date of Birth: ███████

Residence Address: ████████████████████

Street _____ City _____ State ___ Zip Code

Telephone Number: Home: ( 801 ) 440-4400   Business: ( 801 ) 440-4400

How long have you been living at the above residence? _____ 0.5 _____ years

Previous Residence Address: ████████████████████

Street _____ City _____ State ___ Zip Code

Employer Name: MARSH ROSA LLP

Address: P.O. Box 1605          Boise,          Idaho          83701

Street _____ City _____ State ___ Zip Code

Occupation/Position: _____   Length of Service: _____

Social Security #: ████████   Driver's License #: ████████   State: ____

Marital Status: ☐ Single   ☐ Married   ☐ Divorced   ☐ Separated   ☐ Widow

Spouse's Name: _____   Date of Birth: ____/____/____

Address: (If different from residence address) _____

Street _____ City _____ State ___ Zip Code

Telephone Number: Home: (_____)_____   Business: (_____)_____

Employer: _____

Address: _____

Street _____ City _____ State ___ Zip Code

Occupation: _____

Social Security #: _____-__-_____   Driver's License #: _____   State: ____

**Others Residing in Household:**

| NAME/RELATION | SEX | DATE OF BIRTH | DRIVER'S LICENSE NUMBER |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Other Vehicles Located at Residence Address:**

| YEAR | MAKE | MODEL | PLATE NO. | INSURANCE COMPANY |
|---|---|---|---|---|
| 2010 | Audi | TTS | | GEICO |
| | | | | |
| | | | | |
| | | | | |

**VEHICLE INFO**

**Vehicle Identification Number (VIN):** | 5 | N | P | E | C | 4 | A | C | 4 | D | H | 6 | 2 | 4 | 1 | 0 | 1 |

State: Idaho   License Plate Number: 1A8808D   Mileage 45,000

Year: 2013   Make: Hyundai   Model: Sontana   Color: Black   Special Packages: Premium

Please check any vehicle options that apply:

**Transmission**
- ☐ Overdrive
- ☐ 4 Wheel Drive
- ☐ Positraction

**Transmission Type**
- ☒ Automatic Transmission
- ☐ 6 Speed Transmission
- ☐ 5 Speed Transmission
- ☐ 4 Speed Transmission
- ☐ 3 Speed Transmission

**Power**
- ☒ Power Steering
- ☒ Power Brakes
- ☒ Power Windows
- ☒ Power Locks
- ☒ Power Driver Seat
- ☒ Power Passenger Seat
- ☐ Power Antenna
- ☒ Power Mirrors
- ☒ Power Trunk/Gate Release
- ☐ Power Adjustable Pedals

**Radio**
- ☒ AM/FM Stereo Radio
- ☒ CD Player
- ☐ CD Changer/Stacker
- ☐ Premium Radio
- ☒ Satellite Radio
- ☐ Steering Wheel Touch Controls
- ☐ Auxiliary Audio Connection
- ☒ Equalizer

**Seating**
- ☐ Cloth Seats
- ☒ Leather Seats
- ☐ Reclining/Lounge Seats
- ☒ Bucket Seats
- ☒ Heated Seats
- ☒ Rear Heated Seats
- ☐ 3rd Row Seat
- ☐ Power Third Seat

| Decor/Convenience | Roof | Safety/Brakes | | Wheels |
|---|---|---|---|---|
| ☒ Air Conditioning | ☒ Electric Glass Roof | ☒ Driver's Side Air Bag | ☐ Auto Level | ☒ Aluminum/Alloy Wheels |
| ☒ Climate Control | ☐ Electric Steel Roof | ☒ Passenger Air Bag | ☐ Exterior/Paint/glass | ☐ Chrome Wheels |
| ☒ Rear Defogger | ☒ Skyview Roof | ☒ Front Side Impact Air Bags | ☐ Luggage/Roof Rack | ☐ 20" Or Larger Wheels |
| ☐ Tilt Wheel | ☐ Dual Power Sunroof | ☒ Rear Side Impact Air Bags | ☐ Exterior Woodgrain | ☐ Deluxe Wheel Covers |
| ☐ Telescopic Wheel | ☐ Manual Steel Roof | | ☐ Rear Window Wiper | ☐ Full Wheel Covers |
| ☒ Cruise Control | ☐ Manual Glass Roof | ☒ Head/Curtain Air Bags | ☐ Two Tone Paint | ☐ Spoke Aluminum Wheels |
| ☒ Keyless Entry | ☐ Flip Roof | ☒ Alarm | ☐ Three Stage Paint | ☐ Styled Steel Wheels |
| ☒ Console/Storage | ☐ T-top/Panel | ☐ Night Vision | ☐ Clearcoat Paint | ☐ Wire Wheels |
| ☒ Overhead Console | ☐ Glass T-tops/Panel | ☐ Intelligent Cruise | ☐ Metallic Paint | ☐ Wire Wheel Covers |
| ☐ Entertainment Center | ☐ Power Convertible Top | ☒ Parking Sensors | ☐ Rear Spoiler | ☐ Rally Wheels |
| ☒ Navigation System | ☐ Detachable Roof | ☐ Parking Sensors W/Equip | ☒ Fog Lamps | ☐ Locking Wheels |
| ☒ Communications System | ☐ Vinyl Covered Rood | ☒ Anti-lock Brakes (4) | ☐ Tinted Glass | ☐ Locking Wheel Covers |
| ☐ Heads Up Display | ☐ Cabriolet Roof | ☐ Anti-lock Brakes (2) | ☐ Privacy Glass | **Additional Items not listed:** |
| ☐ Wood Interior Trim | ☐ Landau Roof | ☐ 4-wheel Disc Brakes | ☐ Body Side Moldings | |
| ☐ Electronic Instrumentation | ☐ Padded Landau Roof | ☐ Roll Bar | ☒ Dual Mirrors | |
| ☒ On Board Computer | ☐ Padded Vinyl Roof | ☒ Traction Control | ☐ Heated Mirrors | |
| ☐ Message Center | | ☐ Stability Control | ☐ Headlamp Washers | |
| ☒ Memory Package | | | ☐ Signal Integrated Mirror | |
| ☐ Remote Starter | | | | |

**C U S T O M** — Please list any customizations or modifications to the vehicle. This should include any non-factory installed items:

| Customization (Please include brand name and model information) | Date Installed | Value |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**S A L E S  D A T A**

Purchase/Lease Date: __2__ / __14__ / __2013__   NEW ☒   USED ☐   Purchase Price: $ _36,553_

Seller's Name: _Murdock Hyundai_   Telephone Number: ( _801_ ) _262_ - _6401_

Address: _4646 South State Street_

Trade In? ☐ NO   ☒ YES  Value of Trade In: $ _27,182.17_

Lienholder/Leasing Co. Name: _Hyundai Motor Finance_

Address: _P.O. Box 105299_   _Atlanta,_   _Georgia_   _30348_

    Street   City   State   Zip Code

Telephone Number: ( _800_ ) _523_ - _4030_

Account Number: _25536212_   Down Payment: _N/A_

Last Payment: $ _571.11_   Date: _03/24/2015_

Has vehicle ever been repossessed? ☒ NO   ☐ YES

Is the vehicle currently under a repossession order? ☒ NO   ☐ YES

Are payments up to date? ☒ YES   ☐ NO   Lienholder notified of THEFT? ☒ YES   ☐ NO

Do you have any other outstanding loans on this vehicle or its equipment? ☒ NO   ☐ YES

    If yes, with whom? _____   Amount? $_____

Owner(s) as shown on title: _____

**S E R V I C E**

Name of Service Station: _Bronco Motors-Hyundai_   Telephone Number: ( _208_ ) _376-8510_

Address of Service Station: _9250 W Fairview Ave,_   _Boise,_   _Idaho_   _83704_

    Street   City   State   Zip Code

Date of Last Service: __03__ / __10__ / __2015__   Work Performed: _Oil change/duplicate key_

List any work performed since purchase other than tune-up, oil, grease: _____

_____

When & Where Repaired: _____

C116ID (03-14) NS

**P R I O R   D A M A G E**

**Has vehicle been involved in any losses since its purchase?** ☒ NO   ☐ YES
Date of Loss: _____/_____/_____   Location: _____
Type of Loss: _____
Damages/Area: _____
Amount: $_____   Repairs Completed?   ☐ NO   ☐ YES
Insurance Company: _____
Repair Shop Name: _____   Telephone Number: (_____)_____-_____
Address: _____
              Street                                       City                              State         Zip Code
**Was there any unrepaired body or mechanical damage on the vehicle prior to the theft?** ☐ NO   ☐ YES
If "YES" list damages: _____

**T H E F T   I N F O**

Who had custody of vehicle at the time of the theft?  Unknown.  Vehicle was parked and locked
Exact location of theft:  3110 S. 900 W., South Salt Lake, Utah 84119
Reason car at location:  Car left for parking while I was traveling out of state by air for business.
Date and time vehicle last seen before theft:     3  /   20  /  2015          1:00 p.m.   A.M. ☐ P.M. ☒
Date and time vehicle discovered missing:     4  /   25  /  2015          4:00 p.m.   A.M. ☐ P.M. ☒
How many keys were you provided at the time you purchased the vehicle? _____
Did you have any additional keys made for this vehicle?   ☐ NO   ☒ YES   If yes, how many? 1
Are there any keys missing?   ☒ NO   ☐ YES When did you notice these keys missing?_____
Were there any keys in or upon the vehicle at the time of the theft? ☒ NO  ☐ YES  Where?_____
Does the vehicle have either a factory or aftermarket remote starter? ☒ NO  ☐ YES
Was the vehicle locked?   ☐ NO   ☒ YES  Alarm in use?   ☐ NO  ☐ YES  ☐ N/A
Was vehicle parked in a tow away zone?   ☒ NO   ☐ YES    If Yes, did police tow it? ☒ NO   ☐ YES
Are there any outstanding parking tickets?   ☒ NO   ☐ YES

**L O S S   I N F O**

**Briefly describe any vehicle usage 24 hours prior to theft, up to and including a description of the loss:**

          N/A

**G E N E R A L   I N F O R M A T I O N**

Who notified police? Angelo L. Rosa
Precinct:  South Salt Lake, Utah                    Agency/Department: _____
Case Number:  15G002659          Officer:  Lundquist                    Badge Number: _____
Date and time theft reported:   4   / 25  / 2015   Time: 7:32      ☐ A.M. ☒ P.M. ☒ By Phone ☐ In Person

ARE YOU RENTING A CAR DUE TO THE THEFT? ☒ NO   ☐ YES   If "YES", please provide:

Rental Co.: _____   Telephone Number: (_____)_____-_____
WAS THE STOLEN VEHICLE LOANED OR BORROWED?  ☒ NO   ☐ YES
If "YES", complete this section:
Name: _____   Telephone Number: (_____)_____-_____
Address: _____
              Street                                       City                              State         Zip Code
Relationship: _____   Purpose: _____   Does borrower own a vehicle?   ☐ YES   ☐ NO
WAS VEHICLE PARKED IN PUBLIC GARAGE OR PARKING LOT? ☒ NO ☐ YES  If "YES", complete this section.
Name of parking lot/garage: _____
Address: _____
Insurance Company of garage:_____
Who parked the car? _____
Who was given possession of keys – Attendant: _____

Have you or any member of your family ever had a vehicle stolen? ☒ NO   ☐ YES
If yes, Date: _____/_____/_____   Location: _____   Insurance Company: _____
If recovered, its condition: _____
Do you have any other Theft Insurance on stolen vehicle? ☒ NO   ☐ YES _____
Is the vehicle that is reported stolen legally registered and titled at the Department of Motor Vehicles that issued the title and plates?   ☐ NO   ☒ YES
Name and contact information of suspected thief: __Unknown_____

| R E C O V E R Y  D A T A | **RECOVERY**<br>Date: _____/_____/_____   Time: ☐ A.M.  ☐ P.M.  Place: _____<br>Recovery Reported to GEICO? ☐ NO  ☐ YES  Date: _____/_____/_____<br>Is vehicle drivable?  ☐ YES  ☐ NO Who recovered the vehicle? _____<br>Arrests made?  ☐ NO  ☐ YES  Name and Address: _____<br>Damage due to theft? ☐ NO ☐ YES   Describe: _____<br>Was vehicle viewed by policyholder? ☐ NO ☐ YES  Where: _____<br>Vehicle located at the present time: _____<br>　　　　　　　　　　　　　Telephone Number: (_____)_____-_____ |

<table>
<tr><td rowspan="11">P E R S O N A L  E F F E C T S</td><td colspan="2"><b>IF THERE WERE ANY PERSONAL ITEMS IN YOUR VEHICLE THAT REMAIN UNRECOVERED AND YOUR POLICY PROVIDES COVERAGE FOR PERSONAL EFFECTS, PLEASE COMPLETE THIS SECTION:</b></td></tr>
<tr><td><b>Please list items separately in the spaces provided below:</b></td><td><b>Value of each item:</b></td></tr>
<tr><td>Client documents in litigation briefcase, locked in trunk of vehicle.</td><td>N/A</td></tr>
<tr><td>Misc. electronic chargers</td><td>$50.00</td></tr>
<tr><td>Spare change</td><td>$10.00</td></tr>
<tr><td></td><td></td></tr>
<tr><td></td><td></td></tr>
<tr><td></td><td></td></tr>
<tr><td style="text-align:right"><b>TOTAL VALUE OF UNRECOVERED ITEMS (LIMIT OF $200):</b></td><td>$60.00</td></tr>
<tr><td colspan="2"><b>NOTE:  LOSS TO ANY TAPE, WIRE, RECORD DISC OR OTHER MEDIUM FOR USE WITH A DEVICE DESIGNED FOR THE RECORDING AND/OR REPRODUCTION OF SOUND IS NOT COVERED. OTHER EXCLUSIONS MAY APPLY.  PLEASE REFER TO YOUR CONTRACT.</b></td></tr>
</table>

**If the identity of the person or persons responsible for the theft of this vehicle is established, are you willing to prosecute that person or persons?** ☒ YES   ☐ NO

I swear that the information contained in the prior four
(4) pages are true and correct to the best of my knowledge.

Name: __Angelo L. Rosa_____

Address: ███████████████████_____

Signature: _____

Date: __28 April 2015_____

**For your protection, Idaho law requires the following to appear on this form:**
**Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony.**

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
EXHIBIT 3**

# KIIHA LAW OFFICE, PLLC

JAY JUHANI KIIHA, J.D., LLM.
(LICENSED TO PRACTICE IN IDAHO AND WASHINGTON)
P.O. BOX 640
DONNELLY, ID 83615

JAY@KIIHA.COM
208.340.4464

3 August 2015

Leopoldo Valenzuela
GEICO Insurance Company
930 North Finance Center Drive
Tucson, Arizona 85710

  Re: Claim No. 033194405010111
     *Sent via e-Mail to lvalenzuela@geico.com, Letter to follow by US Mail*

Dear Mr. Valenzuela:

This is to serve as Mr. Angelo Rosa's final demand for resolution by GEICO of the outstanding claim referenced above.

Despite numerous attempts by Mr. Rosa and the dealership overseeing repairs of the vehicle in question (Murdock Hyundai in Murray, Utah), the following issues have gone unresolved:

  1. Cosmetic and windscreen damage to the vehicle, estimated to cost approximately $3,400 as evidenced by the attached quote provided to Mr. Rosa by the dealership.

  2. The substantial diminution of value to Mr. Rosa's vehicle affected by (a) the theft of his vehicle for four weeks and (b) the replacement of the vehicle is approximately $25,000 based upon the Kelly Blue Book value of the pre-theft value and a diminution of value.  This is a category of damages recoverable under Idaho law. *See e.g., Boel v. Stewart Title Guaranty Co.*, 43 P.3d 768 (Idaho 2002).

  3. GEICO's refusal to consider the potential for hazardous and/or illegal activities that may have been conducted inside the vehicle during the period when the vehicle was stolen.

  4. Mr. Rosa's loss of use of the vehicle has substantially impair his law and business consulting practice, which has resulted in loss of income that is substantial.

Given the aforementioned factors, GEICO has failed to honor the insurance contract between your company and Mr. Rosa as your insured has suffered (and stands to suffer) are as follows:

1.      $3,400           representing necessary repairs;

2.      $3,700           representing loss of value;

3.      $2,284           in payments made to Hyundai Motor Finance during the loss of use
of the vehicle; and

4.      $15,000          in lost revenue associated from lost use

At this point, GEICO has two options:

1.   GEICO can make an equalizing payment to compensate Mr. Rosa as calculated
above as $24,384.

2.   GEICO can declare the vehicle a total loss and make arrangements with Mr. Rosa's
AutoGAP policy to resolve any deficit between the total loss payment due to Hyundai
Motor Finance (the lienholder) and the value of the vehicle, as diminished.

3.   GEICO can litigate these matters at both the administrative level with the Idaho
Department of Insurance and in a court of appropriate jurisdiction.

Your organization has until 5:00 p.m. on Friday, August 7, 2015 to tender its acceptance of one
of the aforementioned three options.  If no acceptance is tendered by that time, litigation will be
promptly initiated on Mr. Rosa's behalf against GEICO.

Your immediate response is both anticipated and appreciated.


                    Very truly yours,

                    KIIHA LAW OFFICE, PLLC



                    Jay Juhani Kiiha, J.D., LL.M.

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
EXHIBIT 4**

# Marsh Rosa LLP
Legal Counsel & Business Advising

**Angelo L. Rosa, Esq.**

[Licensed to practice law in California and Idaho]

P.O. Box 1605
Boise, Idaho 83701
United States

Tel +1 (801) 440-4400
Fax +1 (801) 415-1773
e-Mail: arosa@marshrosa.com

26 August 2015

Collections Department
HYUNDAI MOTOR FINANCE
P.O. Box 20809
Fountain Valley, California 92728-0809

*Letter Sent via U.S. Mail and Facsimile*

     Re:    HMF Account No. 20130205619880

To Whom it May Concern:

This firm represents the loan account holder of the above-referenced Hyundai Motor Finance ("HMF") account.  In that capacity, we are in receipt of a Notice of Default.

The loan account holder wishes to re-negotiate the terms of the loan in question.  The account holder continues to deal with financial difficulties HMF was put on notice of several months ago. The vehicle was stolen in May 2015, recovered in late June/early July 2015, and has since had its engine replaced in connection with the theft.  The value of the vehicle is substantially lower than the loan amount, both as a result of decrease in market value and diminution of value resulting from the theft.  Moreover, the account holder has no attachable assets or non-exempt property available to satisfy any deficiency judgment should HMF exercise its right to repossess the vehicle and foreclose on the loan.

Accordingly, the account holder proposes the following terms:

1. The principal amount of the loan will be reduced to $12,000.00.

2. The repayment of the loan principal will be reamortized over the remainder of the loan term, which is 43 months.

3. The interest rate of the loan will remain the same, which is 2.99%.

4. The monthly payment of the loan will be adjusted in light of the aforementioned variables to $294.63 per month.

5.  The account holder and HMF will execute a revision to the promissory note to reflect the aforementioned terms.

Please communicate your acceptance of these terms in writing no later than Friday, 4 September 2015.

Yours Very Truly,

MARSH ROSA LLP

Angelo L. Rosa, Esq.

ALR/ar
cc:      File

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
EXHIBIT 5**

# MARSH ROSA LLP
Legal Counsel & Business Advising

**Angelo L. Rosa, Esq.**

[Licensed to practice law in California and Idaho]

P.O. Box 1605                                                                        Tel +1 (801) 440-4400
Boise, Idaho 83701                                                               Fax +1 (801) 415-1773
United States                                                               e-Mail: arosa@marshrosa.com

3 October 2015

Collections Department
HYUNDAI MOTOR FINANCE
P.O. Box 20809
Fountain Valley, California 92728-0809

*Letter Sent via U.S. Mail and Facsimile*

> Re:   HMF Account No. 20130205619880
>         SECOND LETTER

To Whom it May Concern:

This firm represents the loan account holder of the above-referenced Hyundai Motor Finance ("HMF") account.  In that capacity, we are in receipt of a Notice of Default.

The loan account holder wishes to re-negotiate the terms of the loan in question.  The account holder continues to deal with financial difficulties HMF was put on notice of several months ago.  The vehicle was stolen in May 2015, recovered in late June/early July 2015, and has since had its engine replaced in connection with the theft.  The value of the vehicle is substantially lower than the loan amount, both as a result of decrease in market value and diminution of value resulting from the theft.  Moreover, the account holder has no attachable assets or non-exempt property available to satisfy any deficiency judgment should HMF exercise its right to repossess the vehicle and foreclose on the loan.

Accordingly, the account holder proposes the following terms:

1. The principal amount of the loan will be reduced to $12,000.00.

2. The repayment of the loan principal will be reamortized over the remainder of the loan term, which is 43 months.

3. The interest rate of the loan will remain the same, which is 2.99%.

**MARSH ROSA LLP**
Collections Department
HMF Account No. 20130205619880
3 October 2015
Page 2 of 2

4. The monthly payment of the loan will be adjusted in light of the aforementioned variables to $294.63 per month.

5. The account holder and HMF will execute a revision to the promissory note to reflect the aforementioned terms.

Please communicate your acceptance of these terms in writing no later than Friday, 4 September 2015.

Yours Very Truly,

MARSH ROSA LLP

Angelo L. Rosa, Esq.

ALR/ar
cc:      File

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
EXHIBIT 6**

# MARSH ROSA LLP
Legal Counsel & Business Advising

**Angelo L. Rosa, Esq.**
[Licensed to practice law in California and Idaho]

P.O. Box 1605                                                                          Tel +1 (801) 440-4400
Boise, Idaho 83701                                                                  Fax +1 (801) 415-1773
United States                                                                e-Mail: arosa@marshrosa.com

18 November 2015

Legal Department
HYUNDAI MOTOR FINANCE
P.O. Box 20809
Fountain Valley, California 92728-0809

*Letter Sent via Facsimile*

Re:    HMF Account No. 20130205619880
       THIRD LETTER

To Whom it May Concern:

This firm represents the loan account holder of the above-referenced Hyundai Motor Finance ("HMF") account.  In that capacity, we are in receipt of a Notice of Default and Notice of Intent to Sell Property.

The loan account holder wishes to re-negotiate the terms of the loan in question.  The account holder continues to deal with financial difficulties HMF was put on notice of several months ago.  The vehicle was stolen in May 2015, recovered in late June/early July 2015, and has since had its engine replaced in connection with the theft.  The value of the vehicle is substantially lower than the loan amount, both as a result of decrease in market value and diminution of value resulting from the theft.  Moreover, the account holder has no attachable assets or non-exempt property available to satisfy any deficiency judgment should HMF exercise its right to repossess the vehicle and foreclose on the loan.

Accordingly, the account holder proposes the following terms:

1.  The principal amount of the loan will be reduced to $12,000.00.

2.  The repayment of the loan principal will be reamortized over the remainder of the loan term, which is 43 months.

3.  The interest rate of the loan will remain the same, which is 2.99%.

Boise | Denver | Newport Beach | San Francisco | Geneva | Hong Kong | London | Paris

**MARSH ROSA LLP**
HMF Account No. 20130205619880
18 November 2015
Page 2 of 2

4.  The monthly payment of the loan will be adjusted in light of the aforementioned variables to $294.63 per month.

5.  The account holder and HMF will execute a revision to the promissory note to reflect the aforementioned terms.

6.  The account will be restored to good standing and reported to all credit reporting agencies as such.

Please communicate your acceptance of these terms in writing no later than Friday, 27 November 2015.


Yours Very Truly,

MARSH ROSA LLP


Angelo L. Rosa, Esq.


ALR/ar
cc:      File

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
EXHIBIT 7**

## SETTLEMENT AND MUTUAL RELEASE AGREEMENT

This SETTLEMENT AND MUTUAL RELEASE AGREEMENT (the "Agreement") is made and entered into as of 27 July 2017 (the "Effective Date"), by and between HYUNDAI MOTOR FINANCE, INC., a California corporation ("Hyundai"), and ANGELO L. ROSA, an individual residing in the State of Idaho ("Rosa") (each, a "Party" and sometimes collectively referred to as "the Parties") as follows:

WHEREAS, on 8 February 2013, Rosa and Hyundai entered into an agreement for the financing of a 2013 Hyundai Sonata (identifiable by Vehicle Identification Number 5NPEC4AC4DH624101) (the "Vehicle") memorialized in the form of a Retail Installment Sale Contract in the amount required for Rosa to purchase the Vehicle (the "Indebtedness");

WHEREAS, on or about 10 December 2015, Hyundai caused the Vehicle to be repossessed and sold through foreclosure proceedings, leaving a balance due of $13,051.67 (the "Deficiency");

WHEREAS, on account of the Deficiency being claimed by Hyundai, and notwithstanding any defenses Rosa may have with respect to the collection of the Deficiency, the Parties have reached a settlement in principle to resolve all disputes between them and to avoid the time and cost of litigation (the "Settlement"); and

WHEREAS, the terms of the Settlement reached by the Parties are set forth in their entirety in this Agreement,

NOW, THEREFORE, and in consideration of the acts, payments, covenants, and mutual agreements herein described and agreed to be performed, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.   Rosa's Settlement Obligation to Hyundai. In addition to the obligations set forth elsewhere in this Agreement, Rosa's settlement obligation with respect to the Settlement shall be as follows:

(a)   Rosa shall pay Hyundai a total of eleven-thousand and no/100 Dollars ($11,000.00) as final and complete satisfaction of all obligations to Hyundai (including, without limitation, the Indebtedness and the Deficiency) and as consideration for Hyundai's obligations as set forth elsewhere in this Agreement (the "Settlement Amount");

(b)   Rosa shall tender the Settlement Amount to Hyundai in forty-eight (48) consecutive monthly payments of two-hundred and twenty-nine and 16/100 Dollars ($229.16) ("Monthly Payment"). Each Monthly Payment shall be due by the last day of each month. Rosa shall make the first Monthly Payment no later than 1 August 2017 and the final Monthly Payment no later than 1 August 2021.

SETTLEMENT AND MUTUAL RELEASE AGREEMENT
Hyundai Motor Finance, Inc. / Angelo L. Rosa
Page 1 of 7

Initials:
Hyundai:
Rosa:



Each Monthly Payment shall be made by cash, certified check or money order made payable to "Hyundai Capital" and remitted to Hyundai Capital, Attn: Dylan Routh, at 6100 W. Plano Parkway, Suite 2000, Plano, Texas 75093.   Each instrument remitted shall be notated with "Account number: 20130205619880".

(c)     Rosa may make payments greater than the Monthly Payment amount and/or satisfy the outstanding balance of the Settlement Amount at any time without penalty.  Any partial satisfaction of the Settlement Amount by Rosa shall not alter Rosa's obligations to make the Monthly Payments on a consecutive monthly basis.

2.     <u>Hyundai's Settlement Obligations to Rosa</u>.  In addition to the obligations set forth elsewhere in this Agreement, Hyundai's settlement obligations to Rosa shall be as follows:

(a)     Hyundai shall not file, serve or otherwise initiate any legal proceedings against Rosa relating to the Vehicle, the Indebtedness or the Deficiency as long as Rosa's obligations to Hyundai are in fulfilled in accordance with the terms of this Agreement.

(b)     Hyundai shall provide a full accounting of Rosa's payment of the Settlement Amount and the current amount outstanding within fifteen (15) days of receiving a written request by Rosa to Hyundai's counsel.

(c)     Hyundai currently reports Rosa's account as "charged off" on certain credit bureaus. During the terms of this agreement Hyundai will continue to report Rosa's account as "charged off." Hyundai will make no additional or further adverse/negative reports of the Indebtedness or the Deficiency to any credit bureau to whom Hyundai has reported the Indebtedness and/or the Deficiency (including, without limitation, Equifax, Experian, and TransUnion) as long as Rosa's obligations to Hyundai are in fulfilled in accordance with the terms of this Agreement.

(d)     Within fifteen (15) days of Rosa's satisfaction of the Settlement Amount, Hyundai will (i) report the Indebtedness and/or the Deficiency to all credit bureaus to whom Hyundai has reported the Indebtedness and/or the Deficiency as "settled in full", and (ii) provide Rosa with written confirmation of all such reporting.

3.     <u>Confidentiality Obligations</u>.  The Parties agree that (i) the fact of this Settlement Agreement, and (ii) the terms of the Settlement, shall be kept strictly confidential and shall not be disclosed to any person or entity without the prior written consent of the other Party except to the Parties' legal counsel, accountancy/tax/ financial advisor(s), by court order, or to any state and/or federal governmental body to whom disclosure is legally required.

SETTLEMENT AND MUTUAL RELEASE AGREEMENT
Hyundai Motor Finance, Inc. / Angelo L. Rosa
Page 2 of 7

Initials:
Hyundai:
Rosa:

4.      <u>Breach of Agreement</u>.  Each of the following shall be considered a material breach of the terms of this Agreement (each an "Event of Breach"):

(a)      The failure of either Party to perform any of its obligations under this Agreement within a timeframe or by a deadline identified for performance;

(b)      Failure by Rosa to make a Monthly Payment in accordance with the provisions for payment set forth in Paragraph 1 of this Agreement; and/or

(c)      Failure by Hyundai to perform its accounting and/or credit reporting obligations set forth in Paragraph 2 of this Agreement.

5.      <u>Remedies Upon Breach</u>.  Following an Event of Breach, the non-breaching party shall provide written notice to the breaching party and demand that the Event of Breach be cured within fifteen (15) days (the "Cure Period").  If the relevant Event of Breach is not cured by the end of the Cure Period, the non-breaching party shall be entitled to exercise any remedies it has with respect to the subject-matter of the breach.

6.      <u>Payment of Attorneys' Fees and Costs</u>.  The Parties agree that, except as otherwise provided by this Agreement, each shall be solely responsible and liable for their own attorneys' fees and costs of suit incurred in connection with the resolution of the matters contemplated by this Agreement.

7.      <u>Mutual Release</u>.  With the sole exception of the duties and obligations set forth in this Agreement, and contingent upon each Party performing their respective obligations under this Agreement, the Parties agree to release each other as follows:

(a)      <u>Release of Hyundai</u>.  Rosa, for himself as well as for his employees, agents, representatives, attorneys, insurers, successors, spouses (past and present) and heirs and all related parties of any kind or nature (collectively, the "<u>Rosa Parties</u>"), hereby release and discharge Hyundai, its shareholders, directors, officers, supervisors, members, managers, employees, agents, representatives, attorneys, insurers, parent companies, divisions, subsidiaries and affiliates, successors, spouses (past and present) and heirs and all related entities of any kind or nature (collectively, the "<u>Hyundai Released Parties</u>") hereby release and discharge Rosa, from any and all claims, actions, causes of action, grievances, suits, charges, debts, liabilities, demands, obligations, costs, expenses, actions, causes of action and complaints of any kind or nature whatsoever, that they ever had or now have, whether fixed or contingent, liquidated or unliquidated, whether arising in tort, contract, statute, or equity, before any federal, state, local, or private court, agency, arbitrator, mediator, or other entity, regardless of the relief or remedy against the Hyundai Released Parties, and each of them, including specifically (but without limitation to) the Indebtedness and the Deficiency.

Initials:
Hyundai:
Rosa:



(b)    <u>Release of Rosa</u>.  Hyundai, for itself as well as for its shareholders, directors, officers, supervisors, members, managers, employees, agents, representatives, attorneys, insurers, parent companies, divisions, subsidiaries and affiliates, successors, spouses (past and present) and heirs and all related entities of any kind or nature hereby release Rosa, his employees, agents, representatives, attorneys, insurers, successors, spouses (past and present) and heirs and all related parties of any kind or nature (the "Rosa Released Parties") from any and all claims, actions, causes of action, grievances, suits, charges, debts, liabilities, demands, obligations, costs, expenses, actions, causes of action and complaints of any kind or nature whatsoever, that they ever had or now have, whether fixed or contingent, liquidated or unliquidated, whether arising in tort, contract, statute, or equity, before any federal, state, local, or private court, agency, arbitrator, mediator, or other entity, regardless of the relief or remedy against the Rosa Released Parties, and each of them, including specifically (but without limitation to) the Indebtedness and the Deficiency.

(c)    <u>Releases Void Upon Breach</u>.  In the event that either Party to this Agreement commits a material breach of this Agreement and fails to cure said breach according to the terms provided for herein, the obligation of the non-breaching Party to release the breaching Party shall be null and void.

8.    <u>Treatment of Obligations Upon Bankruptcy of Party(ies)</u>. Notwithstanding any other provision in this Agreement, if any portion of the obligation(s) of any Party due under the terms of this Agreement becomes avoidable as a preferential transaction under the United States Bankruptcy Code as a result of a bankruptcy petition filed by, or through an adversarial proceeding filed against, any Party, then Party to whom the obligation is owed shall be allowed a claim in the full amount due under this Agreement, including attorneys' fees, costs of suit and interest at the judgment rate permitted by law accrued from the date the obligation is due, to the full extent permitted by applicable law.

9.    <u>General Provisions</u>.

(a)    <u>No Construction Against Either Party</u>.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. The word "including" means including, without limitation. The Parties each expressly acknowledge and affirm the truthfulness of all statements made herein, including the recitals to this Agreement.

(b)    <u>Integration and Modification</u>.  This Agreement constitutes the full and complete expression of the agreement made by and between the Parties.  All prior negotiations, verbal and written agreements, and/or understandings are superseded by this Agreement.  Any modifications to this Agreement must be made in writing and signed by all Parties to this Agreement.

SETTLEMENT AND MUTUAL RELEASE AGREEMENT
Hyundai Motor Finance, Inc. / Angelo L. Rosa
Page 4 of 7

Initials:
Hyundai:
Rosa:



(c)    Severability. If any provision of This Agreement shall be found by a court of competent jurisdiction to be invalid or unenforceable, in whole or in part, then such provision shall be construed and/or modified or restricted to the extent and in the manner necessary to render the same valid and enforceable, or shall be deemed excised from This Agreement, as the case may require, and this Agreement shall be construed and enforced to the maximum extent permitted by law, as if such provision had been originally incorporated herein as so modified or restricted, or as if such provision had not been originally incorporated herein, as the case may be.

(d)    Amendment. This Agreement may not be altered, amended, waived, or modified except in writing signed by all parties to this Agreement.

(e)    No Third-Party Rights. Except as specifically provided in this Agreement, no other entity or individual shall claim any beneficial interest or right under this Agreement.

(f)    Notices. Any notice(s) to be given under this Agreement must be in writing and shall be (i) mailed by certified or registered U.S. Mail, return receipt requested, or (ii) sent by a nationally recognized courier service (e.g., FedEx or UPS) on an 'overnight' basis, or (iii) transmitted by facsimile, and (iv) by e-Mail as a secondary form of notice, using the following contact information:

To Hyundai:          Hyundai Motor Finance, Inc.
                     c/o Michael Howell
                     M2 LAW GROUP PC
                     1855 N. Lakes Place
                     P.O. Box 330
                     Meridian, Idaho 83680
                     Tel:    (208) 336-3331
                     Fax:    (208) 331-1704
                     E-mail: mhowell@m2law.net

To Rosa:             Angelo L. Rosa
                     c/o ANGELO L. ROSA, ESQ.
                     P.O. Box 1605
                     Boise, Idaho 83701
                     Tel:    (801) 440-4400
                     Fax:    (208) 515-2203
                     E-mail: arosa@rosacommerce.com

Any Party hereto may change its designation of authorized representative and contact information for service of notices by giving notice to the other Parties in the manner provided in this Paragraph 9(f). Any such notice shall be deemed to have been received

Initials:
Hyundai:
Rosa:


when the notice is received by the recipient or when delivery is made, attempted but refused, or attempted if the address is no longer valid.

(g)     Governing Law.  This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of Idaho without giving effect to any choice or conflict of law provision or rule (whether of the State of Idaho or any other jurisdiction) that would cause the application of the laws of that jurisdiction.

(h)     Venue Selection.  Any action or proceeding concerning this Agreement shall be commenced in any state or federal court located in Ada County in the State of Idaho.   Each Party hereby irrevocably submits generally and unconditionally for themselves and to the sole and exclusive jurisdiction of such court in any suit, action or proceeding arising out of or relating to this Agreement.  Each Party hereby agrees and consents that, in addition to any methods of service or process provided for under applicable law, all service of process in any such suit, action or proceeding may be made in the manner set forth in Paragraph 9(f) and service so made shall be deemed complete (i) five (5) days the date postmarked if sent via U.S. Mail, or (ii) on the date of delivery if sent via overnight courier, facsimile and/or e-mail.  Nothing herein shall affect the right of any Party to serve process in any manner permitted by law.

(i)     ALL PARTIES HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THEM ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT. THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH PARTY TO ENTER INTO THIS AGREEMENT.

(j)     Attorneys' Fees and Costs in Enforcement.  In the event that any Party must seek judicial enforcement of this Agreement and/or any of their obligations hereunder, the prevailing Party shall be entitled to recover all costs incurred in seeking such enforcement, including, without limitation, reasonable attorneys' fees, disbursements and other costs of suit. Said costs and attorneys' fees shall include those in any appeal, petition for review or proceeding under the United States Bankruptcy Code.

(k)     Lack of Inducement.  Each Party to this Agreement acknowledges that, except as herein expressly set forth, no representations of any kind or character has been made by any other party, or by any of the other party's agents, representatives, or attorneys, to induce execution of this Agreement.  Each Party to this Agreement also acknowledges that they have chosen to enter this Agreement by their own free will and accord and have not signed this document as a result of duress, overpowering of their free will or otherwise.

Initials:
Hyundai:
Rosa:



(l)     Representation by Counsel. Each Party to this Agreement acknowledges that they have been represented by separate and independent counsel of their own choosing throughout all of the negotiations which preceded the execution of this Agreement and in connection with the preparation and execution of this Agreement or have knowingly and voluntarily waived their right to be represented by counsel. Each Party to this Agreement acknowledges that they have each read this Agreement before executing it and that they have had counsel explain the significance of this Agreement.

(m)     No Assignment. Each Party to this Agreement hereby represents and warrants to one another that they have not previously assigned, transferred or granted, or purported to assign, transfer or grant, any claim, matter, or cause of action, which is being released herein.

(n)     Binding Effect. This Agreement shall bind the Parties and their respective predecessors, agents, employees, successors, transferees and assigns.

(o)     Warranty of Authority. The signatories hereto each represent and warrant that they are authorized to enter into and sign this Agreement on behalf of the person or entity on whose behalf they are designated as executing this Agreement.

(p)     Counterparts. This Agreement may be executed in counterparts, each of which shall be considered an original, but which when taken together, shall constitute one integrated agreement. This Agreement, to the extent signed and delivered by means of a facsimile machine or by e-mail, shall be treated in all manner and respects as an original agreement.

IN WITNESS WHEREOF, each of the undersigned Parties have each voluntarily signed this Settlement Agreement consisting of seven (7) pages, to be effective as of the Effective Date set forth above.

**For Hyundai Motor Finance, Inc.:**          **For Rosa:**

Signed: _____          Signed: _____
Printed: _____          Printed:  Angelo L. Rosa
Its: _____

SETTLEMENT AND MUTUAL RELEASE AGREEMENT
Hyundai Motor Finance, Inc. / Angelo L. Rosa
Page 7 of 7

Initials:
Hyundai:
Rosa:

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
EXHIBIT 8**


**HYUNDAI**
FINANCE

February 19, 2018

Angelo L Rosa Or Angelo L Rosa Esq

Boise, Id 83702

Dear Angelo L Rosa Or Angelo L Rosa Esq,

Attached is your check in the amount of: **$229.16**. Unfortunately we were unable to process due to the following reason(s):

☐ Signature is missing
☐ Endorsement is required
☐ Certified funds are required
☐ Check not payable to Hyundai Motor Finance
☐ Check was damaged by the Post Office
☐ Postdated check
☐ Account Closed / Account Paid Off
☐ Insufficient information to post this transaction
☐ Please provide us with this information:

    ☐ Account number: _____

    ☐ Social Security Number: _____

    ☐ VIN number: _____

☒ **Other:** Check is expired- please reissue a new check

Please send correspondence to the address below. Thank you for the opportunity to Service your account.

Thank you,

Payment Processing
Hyundai Motor Finance

*Charged off*
*retail Act.*

*2013020561 9880*

Hyundai Motor Finance | PO Box 20829, Fountain Valley, CA 92728-0829 | Ph: 800.523.6010 | Fax: 714.965.3972

Rejected Check Letter - HMF.1.09-08-06





**Hyundai Motor Finance**
3161 Michelson Drive, Suite 1900
Irvine, CA 92612

CERTIFIED MAIL

7017 0530 0001 1850 5416



23    AYR-IMP    83702



**ANGELO L ROSA**
**ANGELO L ROSA ESQ.**
BOISE, ID 83702

1105

$\frac{31-5}{1240}$

DATE 28 SEPT- 2017

PAY TO THE ORDER OF  HYUNDAI CAPITAL    $ 229.¹⁶

TWO-HUNDRED AND TWENTY-NINE $ ¹⁶/₁₀₀ DOLLARS

**ZIONS BANK.**
WE HAVEN'T FORGOTTEN WHO KEEPS US IN BUSINESS®
1-800-789-BANK(2265)
zionsbank.com

Executive Banking

FOR  ACCT. NO. 20130205619880

⑈124000054⑈    1105

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
EXHIBIT 9**



**HYUNDAI**

FINANCE

March 22, 2018

ANGELO L ROSA/ANGELO L ROSA ESQ.
851 W FRONT ST APT 1603
Boise, ID 83702

Dear Angelo L Rosa/Angelo L Rosa Esq.:

Attached is your check in the amount of: **$229.16**. Unfortunately we were unable to process due to the following reason(s):

☐ Signature is missing
☐ Endorsement is required
☐ Certified funds are required
☐ Check not payable to Hyundai Motor Finance
☐ Check was damaged by the Post Office
☐ Postdated check
☐ Account Closed / Account Paid Off
☐ Insufficient information to post this transaction
☐ Please provide us with this information:

    ☐ Account number: _____

    ☐ Social Security Number: _____

    ☐ VIN number: _____

    ☒ Other: <u>The written line of the check is not legible.</u>

Please send correspondence to the address below. Thank you for the opportunity to Service your account.

Thank you,

Payment Processing
Hyundai Motor Finance

ANGELO L ROSA
ANGELO L ROSA ESQ.

BOISE, ID  83702

1240

1073

DATE 15 JAN 2018

PAY TO THE
ORDER OF  Hyundai Capital                        $ 229.16

Two hundred and twenty-nine & 16/100                        DOLLARS

Security Features
Included.
Details on Back

ZIONS BANK.
WE HAVEN'T FORGOTTEN WHO KEEPS US IN BUSINESS®
1-800-789-BANK(2265)
zionsbank.com         20130205619880

*Executive Banking*

MAR 2 1 2018

FOR  Auto Payment

⑈124000054⑈:              1073

MP

PAY TO THE ORDER OF
BANK OF AMERICA
121000358
FOR DEPOSIT ONLY
HYUNDAI CAPITAL AMERICA

ENDORSE HERE

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
EXHIBIT 10**



**TransUnion: Potentially Negative Activity**

HYUNDAI FINANCE has flagged your account as Charged off as bad debt.

Sep 21, 2020

**What happened?**

HYUNDAI FINANCE has flagged your account as Charged off as bad debt with Equifax, which may negatively impact your credit score based on TransUnion data.

**Source:**
TransUnion

**Company:**
HYUNDAI FINANCE

**Address:**
10550 Talbert Av, Fountain Valley, CA 92708

**Activity:**
Charged off as bad debt

**What Now?**

If there is anything incorrect, please dispute with TransUnion.

You are receiving this alert because your membership includes 3-Bureau Credit Monitoring & Alerts.

What is **3-Bureau Credit Monitoring & Alerts?** 

 Close

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
EXHIBIT 11**


Overview


Recommendations


Cards


Loans

Based on Equifax data

## Credit changes

Current score **601**

Nov 3

**No score change**

We found **3 changes** to your Equifax credit report.

ck
Overview

Recommendations

Cards

Loans



We found **9 changes** to your Equifax credit report.

### Missed Payments Added

**HYUNDAI MOTOR FINANC**                                           **Payment History Changed** —



On-time payment percentage as of Sep 14, 2020  On-time payment percentage as of Sep 30, 2020

It looks like your payment history was updated or corrected. If you're not sure why this happened, you could contact your lender to find out more.

HYUNDAI MOTOR FINANC



## Updated Account Information

| HYUNDAI MOTOR FINANC | Remarks Added to Account ➕ |


Overview


Recommendations


Cards


Loans



We found **no changes** to your Equifax credit report.

We know it can be jarring when scores change but you don't see why. A few score factors are more 'invisible' — like an account getting older or a scoring model adjusting its recipe.



We found **1 change** to your Equifax credit report.

**See changes** ⌄



We found **4 changes** to your Equifax credit report.

**See changes** ∨



We found **9 changes** to your Equifax credit report.

**See changes** ∨



We found **3 changes** to your Equifax credit report.

**See changes** ⌄



**See changes** ⌄


**Overview**


Recommendations


Cards


Loans

**You're all caught up for now!**

Careers

We'll let you know when there are new changes to review.

Engineering Blog

**Back to top**

In The News

Security Practices

Privacy Policy

Terms of Service

**POPULAR OFFERS**

Best Credit Cards

Credit Cards for Bad Credit

Credit Cards for Good Credit

Balance Transfer Credit Cards

Low Interest Credit Cards

Rewards Credit Cards

Cash Back Credit Cards

Secured Credit Cards

Personal Loans

Auto Insurance

**CREDIT RESOURCES**

Credit and Finance Articles

Credit Card Reviews

Financial Calculators

Credit Karma Blog

**NOTABLE LINKS**

What is a Good Credit Score?

Quick Tips for Your Credit Health

Free Credit Report

Free Credit Monitoring

Free Credit Score

Credit Scores

Case 1:21-cv-00084-BLW   Document 1   Filed 02/19/21   Page 72 of 78









| Overview | Recommendations | Cards | Loans |

© 2007–2020 Credit Karma, Inc. Credit Karma® is a registered trademark of Credit Karma, Inc. All Rights Reserved. Product name, logo, brands, and other trademarks featured or referred to within Credit Karma are the property of their respective trademark holders. This site may be compensated through third party advertisers.

Credit Karma Mortgage, Inc. NMLS ID# 1588622 | Licenses | NMLS Consumer Access
Credit Karma Offers, Inc. NMLS ID# 1628077 | Licenses | NMLS Consumer Access
California loans arranged pursuant to Dep't of Business Oversight Finance Lenders License #60DBO-78868.
Auto, homeowners, and renters insurance services offered through Credit Karma Insurance Services, LLC (dba Karma Insurance Services, LLC; CA resident license #0172748).

Only mortgage activity by Credit Karma Mortgage, Inc., dba Credit Karma is licensed by the State of New York. Credit Karma, Inc. and Credit Karma Offers, Inc. are not registered by the NYS Department of Financial Services.

iPhone is a trademark of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc.

Android is a trademark of Google Inc.

The Equifax logo is a registered trademark owned by Equifax in the United States and other countries.

Credit Karma is committed to ensuring digital accessibility for people with disabilities. We are continually improving the user experience for everyone, and applying the relevant accessibility guidelines.

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
EXHIBIT 12**

## HYUNDAI CAPITAL AMERIC
60 charge-offs

**$14,067**
Closed

### Account Info
Hover over labels for more details

| | |
|---|---|
| Account number | 201302XXXXXXXX |
| Account status | Closed |
| Date opened | Feb 08, 2013 |
| Account type | Auto Loan |

Balance on Sep 17, 2020
**$14,067**

Loan Amount
**$36,552**

### Payment Info

| | |
|---|---|
| Status | Charge-off |
| Status date | Oct 2015 |
| Past due amount | $14,067 |
| Original loan amount | $36,552 |
| Monthly payment | - |
| Late payments | Apr 2014, Apr 2015, Aug 2015, Jul 2014, Jul 2015, Jun 2014, Jun 2015, May 2014, May 2015, Sep 2015 |

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2020 | N | N | N | N | N | N | N | N | N | – | – | – |
| 2019 | N | N | N | N | N | N | N | N | N | N | N | N |
| 2018 | N | N | N | N | N | N | N | N | N | N | N | N |
| 2017 | – | – | – | – | – | – | – | – | – | – | – | – |
| 2016 | N | N | N | N | N | N | N | N | N | N | N | N |
| 2015 | On Time | On Time | On Time | 30 | 30 | 60 | 30 | 60 | 90 | N | N | N |
| 2014 | On Time | On Time | On Time | 30 | 30 | 30 | 30 | On Time | On Time | On Time | On Time | On Time |
| 2013 | – | On Time | On Time | On Time | On Time | On Time | On Time | On Time | On Time | On Time | On Time | On Time |

Legend: ● On Time · N Negative · 30 Days Late · 60 Days Late · 90 Days Late · ○ Data Unavailable

View less ∧

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF
EXHIBIT 13**



## CONFIDENTIAL SETTLEMENT COMMUNICATION

16 October 2020

Hyundai Motor Finance, Inc.
Attn: Legal Department
3161 Michelson Drive Suite 1909
Irvine, California 92612

*Letter transmitted via Facsimile to (714) 965-0520*

Re: **NOTICE OF LITIGATION AND PRE-LITIGATION SETTLEMENT
DEMAND
Account No. 20130205619880
VIN: 5NPEC4AC4DH624101**

To Whom it May Concern:

This office represents its general partner, Mr. Angelo L. Rosa ("Mr. Rosa"). Mr. Rosa is a former borrower of Hyundai Motor Finance, Inc. ("Hyundai"). A complaint has been prepared for filing in the United States District Court for the Central District of California for breach of contract, fraud, slander of credit, and multiple violations of the Fair Credit Reporting Act ("FRCA"). The complaint will be filed on Friday, 23 October 2020 if the resolution proposed below is not reached and documented in writing by that date.

The facts giving rise to the lawsuit are as follows:

1.     On or about 3 February 2013, Mr. Rosa purchased a 2003 Hyundai Sonata (identifiable by Vehicle Identification Number 5NPEC4AC4DH624101) (the "Vehicle") from Murdock Hyundai Murray, LLC a dealership in Murray, Utah. The Vehicle was financed through Hyundai Motor Finance. The account number assigned to the loan was 20130205619880 (the "Financing").

2.     Mr. Rosa had a perfect payment history and performed all loan covenants under the Financing.

3.     In April 2015, the Vehicle was stolen and not recovered until late May 2015.




📞 +1 (208) 900-6525
🖨 +1 (208) 515-2203

✉ AROSA@ROSACOMMERCE.COM

👤 950 WEST BANNOCK STREET, SUITE 1100
BOISE, IDAHO 83702
👤 2211 EAST CAMELBACK ROAD, SUITE 301
PHOENIX, ARIZONA 85016



Hyundai Motor Finance / Legal Department
Re:      Notice of Litigation and Pre-Litigation Demand
16 October 2020
Page 2 of 3

4.      At the time the Vehicle was recovered by law enforcement, Mr. Rosa attempted to drive the Vehicle and discovered that the engine had been damaged and required replacement.  The replacement was overseen by a Murdock Hyundai, the same dealership that had sold Mr. Rosa the Vehicle.

5.      The engine replacement did not resolve the problems with the vehicle and the vehicle failed to operate properly.

6.      While Mr. Rosa brought this matter to Hyundai's attention, the vehicle sat in an unsafe condition.

7.      On or about 10 December 2015, Hyundai caused the Vehicle to be repossessed and sold through foreclosure proceedings, leaving a balance due of $13,051.67 relating to the Financing.  Subsequently, attempts were made to collect the deficiency.

8.      Mr. Rosa, being unwilling to devote the time and energy to litigating the matter, entered into a settlement agreement on or about 18 May 2017 whereby a compromised portion of the deficiency balance would be paid in monthly payments in exchange for a removal of the adverse reporting (the "Settlement Agreement").

9.      Mr. Rosa made the monthly payments but several were rejected by Hyundai after receipt on the grounds that they had been sent to an improper address despite being the address that Mr. Rosa was instructed to send the payments to.  Consequently, Hyundai breached the terms of the Settlement Agreement.

10.      Since that time, Mr. Rosa's Financing was reported intermittently as "charged off" and then recently changed to "bad debt."

11.      This has had a detrimental result on Mr. Rosa's creditworthiness and been cited as the basis for being denied credit on more than one occasion.

Apart from being beyond the scope of collection by virtue of the statute of limitations, there is a need to resolve this issue.  This is the one blight on an otherwise exemplary consumer credit profile for Mr. Rosa.  Accordingly, to repair Mr. Rosa's credit and to resolve the matter without litigation, Mr. Rosa proposes the following resolution

1.      Hyundai will accept the lump sum of five-thousand and no/100 Dollars ($5,000.00) as a good faith payment and as consideration for the obligations described below.

2.      Hyundai will, within five (5) calendar days of receipt of the payment described above, delete and/or cause to be deleted, all adverse reporting of any kind relating to the Financing with all credit bureaus to which the Loan has been reported.  For the sake of clarity, this will include all adverse reporting as "bad debt," "charge off" and/or "settled in part/in full."  Instead, Hyundai will either (a) report the obligation as paid in full and in



Hyundai Motor Finance / Legal Department
Re:      Notice of Litigation and Pre-Litigation Demand
16 October 2020
Page 3 of 3

good standing; or (b) eliminate all reporting of the Financing entirety.  After the appropriate research, we have determined either of these options are within Hyundai's discretion.

3.      The Parties will execute a mutual release covering all matters relating to the Financing, the Vehicle, the Settlement Agreement and any other relationship between Hyundai and Mr. Rosa.

This is a settlement offer intended to facilitate a prompt resolution and shall not constitute an affirmation of the Financing, Mr. Rosa's intent to honor that obligation, nor shall it be used (under Federal Rule of Evidence 408, California Rule of Evidence 1152, and/or any other evidentiary rule(s) and regulation(s)) as an acknowledgment of liability or affirmation/reaffirmation of any obligation.  Instead, the terms proposed above are intended to provide good faith consideration for a necessary resolution to Mr. Rosa's situation and to save Hyundai the time, cost and liability associated with litigation.

If this matter proceeds to litigation, the damages sought will far exceed the amount of the Financing given the damages, statutory penalties and contract-based attorney's fee/cost provisions, will result in Hyundai recovering nothing relating to the Financing.  Moreover, the rejection by Hyundai of Mr. Rosa's performance under the Settlement Agreement is attached.

**If agreement to the foregoing terms is not received, in writing, by my office by 5:00 p.m. Mountain Standard Time on Friday, 23 October 2020 (the "Settlement Response Deadline"), the lawsuit will be filed in the United States District Court having jurisdiction over the matter**.

For the sake of avoiding time consuming and expensive litigation (the cost to each party and the exposure of liability to Hyundai far outstrips the cost of agreeing to this request), I strongly suggest that the parties resolve this matter promptly.

I look forward to your prompt response.

Yours Very Truly,

For ROSA PLLC

Angelo L. Rosa, Esq.

cc:      File